KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
SPENCER MCMANUS - # 322824
sMorgan@keker.com
LIAM BROWN - # 347518
liambrown@keker.com
FLORA D. MORGAN - # 359733
fmorgan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JANE DOE and CYNTHIA HAYS individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:25-cv-03737-EJD

**DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: April 16, 2026
Time: 9:00 a.m.
Dept.: Ctrm 4 - 5th Floor
Judge: Hon. Edward J. Davila

Date Filed: November 14, 2025

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 4

A. LinkedIn provides its advertising partners with tools to run marketing campaigns, including through the Insight Tag........ 4

B. LinkedIn requires advertisers to comply with the LinkedIn Ads Agreement, which prohibits advertisers from transmitting sensitive data to LinkedIn........ 4

C. LinkedIn discloses to users that advertising partners may collect, use, and share user data with LinkedIn through pixel trackers. ........ 5

D. Covered California has numerous forms with optional questions and discloses that certain information about its users will be collected. ........ 7

1. Covered California's numerous forms and optional questions........ 7

2. Covered California's disclosures ........ 9

E. Plaintiffs tether their privacy claims to sparse allegations........ 9

III. ARGUMENT........ 11

A. Plaintiffs' claims against LinkedIn fail because LinkedIn lacked the requisite intent to invade their privacy rights. ........ 11

B. Plaintiffs' claims against LinkedIn fail because LinkedIn disclosed and obtained their consent to receive information about their website interactions. ........ 14

C. Plaintiffs fail to plead the elements of either a Section 631 or 632 claim. ........ 16

1. Plaintiffs cannot state a Section 631 claim under any of its three clauses. ........ 16

a. The first clause of Section 631 does not apply to the Internet. ........ 16

b. Plaintiffs do not allege a claim under the second clause of Section 631 because they fail to allege that LinkedIn read or attempted to read the contents of any communications. ........ 17

c. Plaintiffs do not allege a claim under the second clause of Section 631 because they do not adequately allege that LinkedIn read the contents of any communications while "in transit." ........ 18

d. Plaintiffs do not allege a claim under the third clause of Section 631 because it is derivative and fails for the same reasons as their claims under clauses one and two. ........ 20

2. Plaintiffs cannot state a Section 632 claim. ....20

D. Plaintiffs fail to plead a Federal Wiretap Act claim. ....21

1. Covered California consented to sharing data it collects with LinkedIn. ....21

2. Plaintiffs fail to plead the elements of a Federal Wiretap Act claim. ....22

E. Plaintiffs fail to state a claim for invasion of privacy under the California Constitution. ....23

IV. CONCLUSION ....25

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 22

*Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 3, 20

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 1, 17, 18, 19

*Doe I v. Google LLC*, 2025 WL 1616720 (N.D. Cal. Jun. 6, 2025) .......... 11

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... *passim*

*Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 18

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 11

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 22

*Flores-Figueroa v. United States*, 556 U.S. 646 (2009) .......... 11

*Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 14, 16

*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 16, 17, 20

*Hammerling v. Google LLC*, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 18, 20, 25

*Hammerling v. Google LLC*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 2, 14, 16, 24

*Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025), appeal filed, No. 25-5438 (9th Cir. Aug. 27, 2025) .......... 19

*In re iPhone App. Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................11

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ....................4

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (S.D. Cal. June 9, 2025) ....................23

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................18, 22

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .................... *passim*

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ....................3, 17

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................25

*Pyankovska v. Abid*,
65 F.4th 1067 (9th Cir. 2023) ....................3, 21

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ....................20

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ....................22

*Silver v. Stripe*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ....................14, 16

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .................... *passim*

*Smith v. Google LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ....................11

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ....................16

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................3, 20

*Torres v. Prudential Fin. Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................18

*Turner v. Nuance Commc'ns, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) ....................16

*United States v. Chem. Found., Inc.*,
272 U.S. 1 (1926) ....................13

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....................11

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................23

**State Cases**

*Griffith v. City of Los Angeles*,
346 P.2d 49 (Cal. 1955) ....................13

*Hernandez v. Hillsides, Inc.*,
211 P.3d 1063 (Cal. 2009) ....................23

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) ....................11, 24

*Stark v. Super. Ct.*,
257 P.3d 41 (Cal. 2011) ....................11

**Federal Statutes**

Federal Wiretap Act .................... *passim*

**State Statutes**

Cal. Code Civ. Proc. § 3548 ....................13

Cal. Pen. Code § 631 .................... *passim*

Cal. Pen. Code § 632 ....................3, 20, 21

**Rules**

Fed. R. Civ. Proc. Rule 8 ....................2, 13

Fed. R. Civ. Proc. Rule 9(b) ....................2, 13

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 16, 2026 at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Edward J. Davila in Courtroom 4 of the Robert F. Peckham Federal Building located at 280 South First Street, San Jose, California 95113, Defendant LinkedIn Corporation ("LinkedIn") will and hereby does move to dismiss the consolidated class action complaint filed by Plaintiffs Jane Doe and Cynthia Hays ("Plaintiffs") in its entirety and with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this notice of motion, the following memorandum of points and authorities, LinkedIn's concurrently filed request for judicial notice and the supporting declaration of Flora Morgan and the exhibits attached thereto, and on all pleadings and papers on file or to be filed in this action, on the arguments of counsel, and on any other matters properly before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs accuse LinkedIn of violating federal and state criminal law and the California Constitution because Covered California, the state government's health exchange, placed LinkedIn's Insight Tag on its website. In many ways, this lawsuit is just another in the long line of "pixel" cases that have flooded this District, many of which have been dismissed on the pleadings. *See, e.g.*, *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840–42 (N.D. Cal. 2024) (lack of intent); *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *11 (N.D. Cal. Oct. 10, 2025) (consent); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (no real-time interception). But Plaintiffs' complaint contains pleading defects that make it weaker than the average pixel case, including in comparison with the related Insight Tag cases previously considered by this Court.

Here, although Plaintiffs claim that LinkedIn collected users' "sensitive personal and health information," ***they never once allege that they submitted any health information or other sensitive information whatsoever to Covered California***. All they allege is that they "filled out forms" on Covered California's website and "disclosed identifying information." Compl. ¶¶ 8, 10. But the webpages incorporated into the complaint make clear users can fill out a multitude of different forms without ever having to submit any sensitive information. Indeed, all the questions Plaintiffs point to in their complaint as allegedly soliciting sensitive information are questions that ***a user does not have to answer***. Without any allegations that Plaintiffs actually submitted sensitive information to Covered California, Plaintiffs' allegations boil down to accusing LinkedIn of conduct it discloses explicitly in its Privacy Policy—*i.e.*, collecting data from third-party websites (as the Court has previously found). *See L.B.*, 2025 WL 2899514, at *4.

Also in this case, even more clearly than in earlier Insight Tag cases, materials Plaintiffs themselves cite in their complaint show that ***Covered California***, not LinkedIn, chose to use the Insight Tag and decided where to place the Insight Tag on its website. And because Covered California is a ***government actor***, it was reasonable for LinkedIn to presume that it would operate its website not only within its agreements with LinkedIn but also within its ***own*** state laws.

Thus, under the allegations in the complaint, it is clear that Plaintiffs' claims fail as a

matter of law. The reasons for dismissal are multiple and overlapping.

***Lack of intent.*** Plaintiffs' claims must be dismissed because they have failed to plausibly plead—and cannot plead—that LinkedIn knowingly and intentionally invaded their privacy, as required for each claim. The article from *The Markup* that Plaintiffs incorporate into their complaint makes clear that it was Covered California, not LinkedIn, that controlled where to place the Insight Tag. Indeed, LinkedIn expressly instructed Covered California via its Ads Agreement that it must not place the Insight Tag on pages that would result in transmission of sensitive data. And although Plaintiffs accuse LinkedIn of "expressly contraven[ing] its own terms and representations," that allegation pushes their complaint squarely into the realm of fraud—and they have not and cannot meet either Rule 8 or Rule 9(b) and show that LinkedIn secretly wanted Covered California to contravene the Ads Agreement. The only plausible "takeaway from these allegations is that [LinkedIn] purposefully acted so as *not* to receive any personal health information." *Doe I*, 741 F. Supp. 3d at 840 (emphasis in original).

***Consent.*** Plaintiffs' claims also must be dismissed because the data practices they complain about were disclosed to them. Plaintiffs fail to allege anything about what information they provided to Covered California, much less that they chose to submit any health or sensitive information (including in response to optional questions) in any Covered California online form. At most, based on the allegations, some generic website interaction data may have been collected from Plaintiffs. Without well-pleaded factual allegations, the only plausible conclusion is that Plaintiffs experienced exactly what they agreed that LinkedIn could do (collect their website interactions using the Insight Tag) and what Covered California discloses in its Terms of Use (that it would collect certain categories of user information during the enrollment process). These disclosures doom Plaintiffs' claims, each of which requires that Plaintiffs did not consent to the data practices at issue. *See, e.g.*, *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *11 (N.D. Cal. Oct. 10, 2025); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of privacy claims based on disclosures in privacy policy); *Hammerling v. Google LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (same).

***CIPA Statutory Defects.*** Plaintiffs' two CIPA claims suffer from multiple additional

statutory defects requiring the claims to be dismissed.

*Section 631:* Plaintiffs' claims under Section 631's three clauses each fail to state a claim. Courts have "uniformly" found that their clause one wiretapping claim does not apply to the Internet. *See, e.g.*, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023). The clause two interception claim fails because Plaintiffs have failed to allege that LinkedIn read or attempted to read or learn the contents of any of their communications, or that LinkedIn did so while any communications were "in transit." *L.B.*, 2025 WL 2899514, at *16. And because the claims under those two clauses fail, Plaintiffs' claim under the third derivative "use" clause necessarily fail too. *See Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024).

*Section 632:* Plaintiffs' Section 632 claim fares no better. Courts have held, in general, that Internet-based communications presumptively do not give rise to a reasonable expectation of privacy. *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014). And Plaintiffs have alleged even fewer facts than in previous cases to plausibly overcome this presumption or otherwise establish that their unspecified interactions with forms on the Covered California website were confidential. *Swarts*, 689 F. Supp. 3d at 746–47.

***Federal Wiretap Act***. Plaintiffs' federal wiretapping claim must be dismissed because the Act is a one-party consent statute. *Pyankovska v. Abid*, 65 F.4th 1067, 1074 (9th Cir. 2023). Plaintiffs' own allegations and materials incorporated into the Complaint establish that Covered California installed the Insight Tag on its website and, thus, consented to the collection and sharing of communications through its website. In addition, this claim also fails for all the reasons that Plaintiffs' CIPA claims fail.

***California constitutional invasion of privacy.*** Plaintiffs' claim for invasion of privacy under the California Constitution fails because they cannot allege that LinkedIn intruded upon their privacy at all, much less in a highly offensive manner. In the absence of plausible allegations that they submitted any sensitive information, Plaintiffs' allegations fall far short of ones the Court previously found sufficient to survive a motion to dismiss—*i.e.*, where there was an alleged transfer of "medically-related" data. *L.B.*, 2025 WL 2899514, at *18–20. Plaintiffs

thus cannot plausibly establish that they had a reasonable expectation of privacy or that LinkedIn engaged in an egregious breach of social norms sufficient to violate California's Constitution. *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *6 (N.D. Cal. Dec. 22, 2023).

Accordingly, Plaintiffs' claims should be dismissed with prejudice.

## II. BACKGROUND

### A. LinkedIn provides its advertising partners with tools to run marketing campaigns, including through the Insight Tag.

LinkedIn is a social network with a professional focus that helps its members find the right jobs, create and strengthen professional relationships, and learn skills to succeed in their careers. Compl. ¶ 20, n. 4; Morgan Decl. Ex. H. In addition, LinkedIn offers advertising and marketing tools through its Marketing Solutions services. Compl. ¶ 20, n. 5; Morgan Decl. Exs. K–M. Using these services, advertisers can direct their advertisements to LinkedIn's members so that those members receive advertisements relevant to their interests. Compl. ¶ 21.

LinkedIn's "Insight Tag" is a code snippet, offered through its Marketing Solutions services, that advertisers can add to their websites to help optimize ad campaigns for visitors of their websites. Compl. ¶¶ 27–28. Advertisers control the implementation of the Insight Tag on their websites: they choose whether to install the Tag at all, and, if so, where and on which pages to do so. Compl. ¶ 28, n. 17, 18; Morgan Decl. Exs. I–J. Advertisers install the Tag themselves or ask a third-party tag manager to add the Tag to their website; and they can choose to install the Tag as a "first-party cookie," which means it is stored directly in their websites' domain and is thus "offered by the website being visited." Compl. ¶ 28, n. 17, 18; Morgan Decl. Exs. I–J. After installation, the Tag uses cookies to transmit limited data about users' interactions with that website to LinkedIn, which Plaintiffs allege LinkedIn can use to make a "probabilistic match of a user's identity." Compl. ¶¶ 31, 33; *see* Morgan Decl. Exs. I–J (noting that the Insight Tag has certain "default" settings, which can be adjusted by the advertiser).

### B. LinkedIn requires advertisers to comply with the LinkedIn Ads Agreement, which prohibits advertisers from transmitting sensitive data to LinkedIn.

Before advertising with LinkedIn, an advertiser must agree to the LinkedIn Ads

Agreement, which governs LinkedIn's relationship with its advertisers. Compl. ¶ 21; Morgan Decl. Ex. E. The Ads Agreement ***prohibits*** advertisers from sending sensitive information to LinkedIn via the Insight Tag:

> You will . . . not transfer to LinkedIn any data that you know or reasonably should know . . . constitutes Sensitive Data, including by . . . installing the Insight Tag on a page that collects medical, financial, or other Sensitive Data about identified or identifiable individuals.

Morgan Decl. Ex. E § 5. "Sensitive Data" is defined to include any "data concerning health or sexual orientation." *Id.* § 13.2.

In addition to the Ads Agreement terms, LinkedIn also instructs advertisers like Covered California to "never add" the Insight Tag to website "pages that collect or otherwise handle health, financial, or other sensitive data of individual users" in its description of the Insight Tag. Compl. ¶ 28, n. 17, 18; Morgan Decl. Exs. I–J. LinkedIn repeats that admonition in the "LinkedIn Insight Tag FAQs": the "Insight Tag should not be installed on web pages" that offer "specific health-related . . . services . . . to consumers" and the "LinkedIn Insight Tag" page: "Paste the Insight Tag code from Campaign Manager in your website's global footer, unless your site includes pages that collect or otherwise handle health, financial, or other sensitive data of individual users. Never add the JavaScript code to any such pages." Compl. ¶ 28, n. 17, 18; Morgan Decl. Exs. I–J.

### C. LinkedIn discloses to users that advertising partners may collect, use, and share user data with LinkedIn through pixel trackers.

Plaintiffs allege they are LinkedIn members. Compl. ¶¶ 7, 10 (alleging that both Plaintiffs have LinkedIn accounts). All LinkedIn members are required to agree to LinkedIn's User Agreement, Privacy Policy, Cookie Policy, and Cookie Table. Compl. ¶¶ 7, 10, 36; Morgan Decl. Ex. A § 1.1. Plaintiffs incorporate into their complaint quotations from LinkedIn's User Agreement and Privacy Policy—*see* Compl. ¶¶ 7, 37–39, 59—but omit the detailed disclosures about LinkedIn's privacy and advertising practices that they agreed to by signing up for and using LinkedIn and that are in multiple instances contained in the very same documents they cite.

LinkedIn's **User Agreement** provides that use of LinkedIn's services is subject to

agreement to the User Agreement, the Privacy Policy, and the Cookie Policy, which detail "the collection, use, and sharing of [the user's] personal data." Morgan Decl. Ex. A § 1.1. This includes, as Plaintiffs allege, services related to the Insight Tag. Compl. ¶ 38–39; Morgan Decl. Ex. A § 1.1.

LinkedIn's **Privacy Policy** includes a section entitled "Cookies and Similar Technologies," which states that LinkedIn "use[s] cookies and similar technologies (e.g., pixels and ad tags) to collect data . . . to recognize you and your device(s) on, off and across different services and devices where you have engaged with [LinkedIn's] Services." Compl. ¶ 38; Morgan Decl. Ex. B § 1.4; *see also id.* § 2.4 (stating that LinkedIn targets ads to members using "[d]ata collected by advertising technologies on and off [LinkedIn's] Services using pixels, ad tags . . ., cookies, and other device identifiers"). The Privacy Policy further and explicitly states that LinkedIn "receive[s] information about your visits and interaction with services provided by others when you log-in with LinkedIn or visit others' services that include some of [its] plugins . . . or our ads, cookies or similar technologies." *Id.* § 1.8. Finally, the Privacy Policy provides a link to controls on LinkedIn that allow a user to "opt out from [LinkedIn's] use of data from cookies and similar technologies that track [a user's] behavior on the sites of others for ad targeting and other ad-related purposes." *Id.* § 1.4.

The LinkedIn **Cookie Policy** provides even further details regarding LinkedIn's data collection. The Cookie Policy reiterates that LinkedIn uses "cookies and similar technologies such as pixels . . . to collect and use data as part of [LinkedIn] Services." Compl. ¶ 36; Morgan Decl. Ex. C. It describes a pixel as a "tiny image that may be embedded within web pages and emails" that LinkedIn uses "to learn more about your interactions with email content or web content, such as whether you interacted with ads or posts." Morgan Decl. Ex. C. The Cookie Policy states that pixels are used to help LinkedIn "show relevant advertising to you more effectively," including by "learn[ing] whether content has been shown to you or whether someone who was presented with an ad later came back and took an action . . . on another site," and refers back to the Privacy Policy for more information. *Id.*

Finally, LinkedIn's **Cookie Table**, discussed and linked in the Cookie Policy and

incorporated into Plaintiffs' Complaint, specifically discloses LinkedIn's Insight Tag. Compl. ¶ 32, n. 23; Morgan Decl. Ex. D. That table lists "cookies that we and third parties place" and provides "information about the cookies that LinkedIn uses on third party sites including when LinkedIn's Insight Tag is installed on our customers sites." Morgan Decl. Ex. D. Likewise, in its section "Cookies LinkedIn drops on third party sites," LinkedIn states that it "enables third party sites to include some of its services such as Insight Tag." *Id.* As Plaintiffs allege, relying on this table, these cookies include the "lms_ads" and "li_sugr" cookies, each of which can be used to attempt to "identify LinkedIn Members off LinkedIn for advertising." Compl. ¶¶ 32–33; Morgan Decl. Ex. D.

### D. Covered California has numerous forms with optional questions and discloses that certain information about its users will be collected.

Covered California is California's state-run health insurance exchange, formed in response to the passage of the Affordable Care Act, to help Californians apply for marketplace health insurance coverage. Morgan Decl. Ex. N1.

#### 1. Covered California's numerous forms and optional questions

When a user goes to Covered California's "Get Started" page, the user can begin filling out various forms either by clicking one of two buttons: "Shop and Compare" or "Start Online Application." Morgan Decl. Ex. N2. The "**Shop and Compare**" button allows users to find and compare initial quotes by entering some basic information, but a user need not do that to apply for health insurance on the website. *Id.* Ex. N3. A user who clicks this button is taken to a form asking for the coverage year, the user's zip code, the total household income, and the number of household members. *Id.* Ex. N4. The user is also presented with three checkboxes: "Needs Coverage," "Pregnant," and "Blind or Disabled." *Id*. Ex. N5. A user need not click any of those boxes except "Needs Coverage" before submitting this initial form by clicking "See Results." *Id*. The user is then taken to a page with a summary of options. *Id.* Ex. N6. The user can then choose either "Apply Now" to begin a formal application or "Preview Plans." *Id*. If the user clicks "Apply Now," the user is taken to the "Start Online Application" page discussed below.

If the user clicks "**Preview Plans**"—which, again, a user need not do to apply for health insurance—the user is taken to another form that asks three questions. *Id.* Ex. N7. The first is whether the user prefers a lower premium with higher costs or a higher premium with lower costs. *Id.* The second and third ask what level of doctor visits and prescriptions the user expects—low, medium, high, or very high. A user does not need to answer any of these questions before clicking "Next." *Id.* The user is then offered the option of searching for a medical provider. *Id.* Ex. N8. Again, the user need not answer this question before clicking "Next." *Id.* After that, the user is shown a list of potential plans available to the user. *Id.* Exs. N9, N9A.

If a user clicks "**Start Online Application**," the user can then choose from three different series of forms—one to create a new application, one to link an existing application, and one to move from a Medi-Cal plan to a Covered California Plan. *Id.* Ex. N10. If a user clicks the new-application option, the user is first taken to a form for creating an account. *Id.* Ex. N11. That form asks for a name, date of birth, social-security number (marked "Optional"), and preferred contact method (email address, phone number, or mailing address). *Id.*; *see also id.* Ex. N12A (confirmation).

If the user creates an account, the user can then go to an application menu. *Id.* Ex. N12B; *see also* Exs. N12C–N12E (depicting subsequent webpages leading to the Household Information form). The first form within that is for "**Household Information**." *Id.* Ex. N12F. That form prompts the user to fill in identifying information about each household member for which the user seeks insurance: name, age, sex, contact information, etc. *See id.* Ex. N12G. At the end of that form, the user is presented with a set of "Optional" questions about each household member's ethnicity and sexual- and gender-orientation. *Id.* Ex. N12G at 9–10. After completing the Household Information form, a user can choose either to go through a third-party identity-verification process in order to continue with the other applications on the website or to apply by downloading a paper application or being linked to a certified enroller. *Id.* Ex. N12H.

The website contains numerous other forms, such as an application for a health-insurance exemption in the case of various hardships, such as death, bankruptcy, or domestic violence, or

applications for exemptions based on affordability or religion. *Id.* Ex. N13 (general hardship exemption page), Ex. N14 (affordability); Ex. N15 (religion); *see also id.* Ex. N12I (listing other forms).

**2. Covered California's disclosures**

Like LinkedIn, Covered California discloses on its public website through its **Terms and Conditions of Use** and **Notice of Privacy Practices** that it will collect certain information about website visitors and their interactions with the website. *See* Morgan Decl. Exs. O–P. Covered California requires website visitors to agree to the terms of these agreements before they can create an account to view healthcare plans. *See id*. Ex. N11 at 2. Covered California's **Terms and Conditions of Use** and **Notice of Privacy Practices** disclose that Covered California collects information from website users. *See* Morgan Decl. Exs. O–P. For example, in the **Terms and Conditions of Use**, Covered California discloses that it automatically tracks numerous categories of information, which "helps [Covered California] analyze [its] website to continually improve the value of the materials available, including, but not limited to, marketing materials." Morgan Decl. Ex. P. These categories of information include, but are not limited to, "[t]he web pages or services you accessed at this site," the "Uniform Resource Locator (URL) that referred to the requested file," "[t]he exact request the user made," and "[i]f you downloaded a form, the form that was downloaded." *Id.* The Terms and Conditions of Use webpage also hyperlinks to Covered California's Privacy Policy. *Id.*

Visitors to Covered California's website are required to consent to these two agreements before creating an account. *See* Morgan Decl. Ex. N11 at 2. A user cannot submit the form for creating an account, discussed above, until they check a box next to the phrase, "I understand and agree to the **Terms and Conditions of Use** and **Notice of Privacy Practices**," which includes hyperlinks to each policy. *See id*.

**E. Plaintiffs tether their privacy claims to sparse allegations.**

Plaintiffs allege virtually no facts about their own experiences on Covered California's website. Plaintiff Doe's only allegation about her specific experience is that she "filled out forms" on Covered California's website "[i]n or around June, 2024 [*sic*]." Compl. ¶ 8. Plaintiff

Hays's allegations are even worse—she likewise alleges that she "filled out forms on the Covered California Website" but does not specify when she did so, or even that she did so when the Insight Tag was allegedly active on the website. *Id.* ¶ 10. Neither Plaintiff alleges which of the numerous "forms" on the website they "filled out" (did they fill out the preliminary "Shop and Compare" form, the "Preview Plan" form, the form to create an account, the form to create a new application or to link or transfer an application, one of the exemption forms, or some other form?) or what information, if any, they disclosed in those unspecified "forms" (which questions on which form(s) did they answer?). Certainly, neither Plaintiff alleges that she submitted any health information or other sensitive information.

Nor do Plaintiffs allege facts plausibly showing that LinkedIn used any information collected from them. Their generalized allegations about targeted advertising are untethered to them. Compl. ¶¶ 22–26, 84. Plaintiffs nowhere allege that they received *any* targeted advertising (Covered California's advertisements or otherwise), nor that they themselves saw any such advertising on LinkedIn, Covered California's website, or any other platform.

Plaintiffs include allegations that parrot statements from *The Markup* article about questions in certain Covered California forms that could solicit other users to submit health information. Compl. ¶¶ 42–46. The first is the "Pregnant" and "Blind or Disabled" checkboxes one can choose to click in the "Shop and Compare" form. Compl. ¶¶ 45, 47; Morgan Decl. Ex. Q at 2. The second is the optional medical-provider search box and optional volume of prescriptions question in the "Preview Plans" form. Compl. ¶¶ 45, 48; Morgan Decl. Ex. Q at 5. The third is the optional ethnicity question and gender-identity questions in the "Household Information" form. Compl. ¶¶ 45, 49; Morgan Decl. Ex. Q at 2. Finally, Plaintiffs quote the article's discussion of questions about domestic abuse, apparently from the exemption application pages. Compl. ¶ 45; Morgan Decl. Ex. Q at 6. Plaintiffs do not allege that they answered any of these questions—or that any user has to do so.

Based on these barebones allegations, Plaintiffs contend that LinkedIn violated their privacy rights under two criminal statutes, CIPA and the Federal Wiretap Act, and the California Constitution. Compl., Count I–IV. Plaintiffs seek to represent a California and national class of

all people "with a LinkedIn account who completed any form on [Covered California's] Website, whose protected personal information was disclosed through the Website to LinkedIn" and California subclass. Compl. ¶ 51.

## III. ARGUMENT

### A. Plaintiffs' claims against LinkedIn fail because LinkedIn lacked the requisite intent to invade their privacy rights.

Each of Plaintiffs' claims requires them to allege that LinkedIn ***knowingly and intentionally*** obtained their data without authorization and used it for an improper purpose. *See United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (the Federal Wiretap Act requires that "the defendant acted intentionally, that is, purposefully and deliberately and not as a result of accident or mistake"); *Doe I*, 741 F. Supp. 3d at 844 ("CIPA liability only extends to willful or intentional conduct," and such "intent" is "a necessary element of an invasion of privacy claim" under California's Constitution). Ninth Circuit precedent requires "something more than mere awareness that an interception might occur" for a software service provider to demonstrate intent. *Doe I*, 741 F. Supp. 3d at 840 (characterizing *Christensen*, 828 F.3d at 790); *see also Doe I v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. Jun. 6, 2025) (dismissing amended complaint in part on same grounds). CIPA and the Federal Wiretap Act are criminal statutes and thus impose a *mens rea* requirement of "guilty knowledge," which must be satisfied as to each element. *Stark v. Super. Ct.*, 257 P.3d 41, 55–56 (Cal. 2011); *see also Flores-Figueroa v. United States*, 556 U.S. 646, 658 (2009) (a criminal statute's mens rea requirement is generally applied to each element). Likewise, "negligent conduct" is not "actionable conduct under the California Constitution" because it requires an "'egregious breach of the social norms underlying the privacy right.'" *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 655 (Cal. 1994)). When a company like LinkedIn explicitly advises its advertising partners not to share sensitive user information using its software, that company cannot also have the requisite knowledge and intent necessary for a violation of these criminal statutes or the California Constitution. *Doe I*, 741 F. Supp. 3d at 842; *but see Smith v. Google LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024); *Doe v. Meta*

*Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023).

As part of LinkedIn Ads Agreement, LinkedIn conditions Covered California's use of the Insight Tag on its agreement to "not transfer to LinkedIn any data that you know or reasonably should know . . . constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects medical, financial, or other Sensitive Data about identified or identifiable individuals." Morgan Decl. Ex. E. LinkedIn repeats this requirement frequently, both on its "Insight Tag" page for its "Market Solutions" services, as well as in its Insight Tag FAQs. Morgan Decl. Exs. J–I. Given this admonition, LinkedIn could not have intended to collect through the Insight Tag any health data from Covered California users.

This Court previously considered the significance of LinkedIn's warnings to advertisers about sensitive data sharing in various policies, including the Ads Agreement, in different but related cases. *See L.B.*, 2025 WL 2899514, at *11–13 (order on motions to dismiss in five Insight Tag cases). Based on the allegations in those cases, the Court concluded the Ads Agreement and other LinkedIn advertising policies were not "entirely dispositive of its intent at the pleadings stage" but that plaintiffs' allegations created only a "relatively weak" inference of intent "in light of LinkedIn's policies to the contrary and the absence of specific facts concerning how LinkedIn uses the data it allegedly receives from the Insight Tag." *Id.* at *13.

For several reasons, Plaintiffs' allegations here do not create even a "weak" inference that LinkedIn intended for the advertiser to act contrary to the Ads Agreement. ***First***, Plaintiffs cite and rely upon (and indeed, borrow their allegations from) an article in *The Markup* that makes clear that Covered California—not LinkedIn—had the sole ability to choose which webpages would bear the Insight Tag and, thus, had full control over what data was transmitted through the Insight Tag. Compl. ¶ 44–47; Morgan Decl. Ex. Q. Plaintiffs plead no facts establishing any action by LinkedIn in placement of the Tag on Covered California's website (nor could they). Plaintiffs' claims are thus expressly based on ***Covered California's*** alleged installation of the Insight Tag on pages that purportedly handle health-related information, and not on any independent action taken by LinkedIn.

***Second***, and unlike in the previous series of Insight Tag cases, this case involves actions

allegedly taken by a government entity. Under the well-established principle of presumption of regularity, LinkedIn was entitled to presume that Covered California, as a government actor, would act within its own laws when it placed the Insight Tag on its own website. *See United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *Griffith v. City of L.A.*, 346 P.2d 49, 55 (Cal. 1955) ("[I]t is presumed that official duty was regularly performed and that the law was obeyed."); Cal. Code Civ. Proc. § 3548. Plaintiffs plead no facts overcoming that presumption, much less facts showing that any criminal or tortious intent could be imputed to LinkedIn from Covered California's choice to transmit any health-related data (Plaintiffs' or otherwise) from its website.

***Finally***, Plaintiffs' complaint crosses the boundary into alleging that "LinkedIn's admonitions to advertisers are false or misleading," such that their allegations "trigger the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *L.B.*, 2025 WL 2899514, at *13 n. 10. Here, Plaintiff expressly alleges that "LinkedIn engaged in conduct that ***expressly contravened its own terms and representations***." Compl. ¶ 5 (emphasis added). Thus, even more clearly than in previous cases, Plaintiffs affirmatively accuse LinkedIn of fraudulently misrepresenting its intent not to receive any health data. But the allegations in Plaintiffs' complaint to support this claim do not satisfy Rule 8, much less Rule 9(b). Each paragraph Plaintiffs have devoted to alleging intent recites some version of a bare conclusion that LinkedIn "intentionally" intercepted class members' health data. *See* Compl. ¶¶ 11, 40, 68, 70, 89, 105, 109–09. These textbook legal conclusions do not come close to plausibly pleading that LinkedIn's express statements in the Ads Agreement are fraudulent, or that LinkedIn secretly desires for advertisers to flout its Ads Agreement and admonitions. Plaintiffs' conclusory allegations regarding LinkedIn's intent, which lack any support from well-pleaded facts, fail to satisfy even Rule 8's plausibility requirements in the first instance, much less Rule 9(b).

Taken together, Plaintiffs' allegations do not create even the "relatively weak" inference of intent that barely survived in previous cases. *L.B.*, 2025 WL 2899514, at *13. Plaintiffs'

claims should be dismissed for this reason alone.

**B. Plaintiffs' claims against LinkedIn fail because LinkedIn disclosed and obtained their consent to receive information about their website interactions.**

Each of Plaintiffs' claims requires them to establish that they did not consent to the alleged conduct. *See* Cal. Pen. Code § 631 (imposing liability only for interception "without the consent of all parties"); 18 U.S.C. § 2511(2)(d) (interception "shall not be unlawful . . . [where] one of the parties to the communication has given prior consent to [the] interception"); *Smith*, 745 F. App'x at 9 ("Knowing authorization of the practice constitutes Plaintiffs' consent."); *Hammerling*, 2024 WL 937247 at *3 (no reasonable expectation of privacy where Privacy Policy disclosed collection of data).

A court can consider disclosure and consent issues on a motion to dismiss privacy claims. *L.B.*, 2025 WL 2899514, at *13; *Hammerling*, 2024 WL 937247, at *3 (affirming dismissal on this basis); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA claim for failure to adequately allege lack of consent); *cf. Silver v. Stripe*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021) (dismissing wiretap claims and noting that "[c]onsideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim"). Indeed, the Ninth Circuit has consistently affirmed the dismissal of privacy claims for failure to plead lack of consent where terms of service, privacy policies, or related disclosures describe the practices at issue. *See, e.g.*, *Smith*, 745 F. App'x at 9 (affirming dismissal of California state law claims where the practice complained of "f[ell] within the scope of [p]laintiffs' consent to Facebook's Terms and Policies"); *Hammerling*, 2024 WL 937247, at *3 (affirming dismissal of privacy claim where privacy policy "expressly disclosed Google's intention to track their activity on third-party apps").

Here, Plaintiffs' allegations confirm that they consented to LinkedIn receiving data about their interactions with third-party websites. Unlike in *L.B.*, in which the Court found plausible allegations regarding the type of information required in each website form and alleged to be submitted, *see* 2025 WL 2899514, at *6–7, Plaintiffs here have not pled ***any*** facts showing that they submitted any sensitive or health-related information on the Covered California website.

The only facts Plaintiffs allege about their own interactions with Covered California are that they "filled out forms" on the website, and that Plaintiff Doe did so "[i]n or around June 2024." *Id.* ¶¶ 8, 10. Plaintiffs do not allege which of the numerous forms on the website they filled out, or that they answered any questions in any form that required any input of health-related information whatsoever. As for Plaintiff Hays, she does not even allege that she filled out forms during the time when the Insight Tag was allegedly active on the website. And while they attempt to bootstrap their claims using *The Markup* article, Plaintiffs do not allege that they answered any of the questions discussed in the article that solicited health information, nor do they allege that any user is ever required to answer any of those questions. *See* Compl. ¶¶ 44-49; Morgan Decl. Ex. N; Section II.D, *supra*.

Without plausible allegations that Plaintiffs submitted sensitive information, the only reasonable inference is that Plaintiffs submitted some generic website interaction data to Covered California, the collection of which was exactly what Covered California and LinkedIn disclosed would occur in its policies. *See* Morgan Decl. Exs. A–C, N, O–P. In its Terms and Conditions of Use, Covered California discloses that it automatically tracks numerous categories of information, including "[t]he web pages or services you accessed at this site," the "Uniform Resource Locator (URL) that referred to the requested file," "[t]he exact request the user made," and "[i]f you downloaded a form, the form that was downloaded," to analyze its website and improve the value of available materials, including "marketing materials." Morgan Decl. Ex. P. That Covered California utilizes a third-party tool (the Insight Tag) to accomplish these collections does not transform practices disclosed in its Terms into criminal or tortious acts. Indeed, the article from *The Markup* on which Plaintiffs base their claims makes clear that the Insight Tag is a tool placed by the advertiser—Covered California—to accomplish the disclosed collection of information. *See* Morgan Decl. Ex. Q.

As the Court previously found, LinkedIn's policies expressly disclose that the Insight Tag may collect user data from third-party websites. *L.B.*, 2025 WL 2899514, at *5. LinkedIn discloses that it "use[s] cookies and similar technologies (e.g., pixels and ad tags) to collect data . . . to recognize you and your device(s) on, off and across different services and devices where you

have engaged with [LinkedIn's] Services." Morgan Decl. Ex. B § 1.4; *see also id.* Ex. C (LinkedIn uses "cookies and similar technologies such as pixels . . . to collect and use data as part of [LinkedIn] Services"). Indeed, LinkedIn expressly discloses the use of the Insight Tag in its Cookie Table, which is incorporated into its Cookie Policy, explaining clearly and unambiguously how it operates and what information it collects. *See id.* Exs. C, D. Thus, Plaintiffs were on notice of the fact that a website operator could use the Insight Tag to collect information related to their website interactions and browsing behavior—*i.e.*, filling out forms. Indeed, as LinkedIn members, they agreed to these very policies.

Because these disclosures include the alleged data practices that are the subject of Plaintiffs' nonspecific allegations, all of their claims should be dismissed with prejudice. *See, e.g.*, *Smith*, 745 F. App'x at 9; *Silver*, 2021 WL 3191752, at *5; *Hammerling,* 2024 WL 937247, at *3; *Garcia*, 78 F. Supp. 3d at 1136; *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020).

### C. Plaintiffs fail to plead the elements of either a Section 631 or 632 claim.

#### 1. Plaintiffs cannot state a Section 631 claim under any of its three clauses.

Section 631 contains three clauses prohibiting different forms of conduct: (1) intentional wiretapping; (2) willfully and without the consent of all parties to the communication, attempting to learn the contents or meaning of a communication in transit over a wire; and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities. *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *4 (N.D. Cal. May 28, 2024). Plaintiffs fail to plead a claim under any of the three.

##### a. The first clause of Section 631 does not apply to the Internet.

Some of Plaintiffs' allegations could be read as alleging a claim under clause one. *See* Compl. ¶ 70. As the plaintiffs in the related cases conceded at oral argument, such a claim fails as a matter of law. *L.B.*, 2025 WL 2899514, at *14 n. 12 (noting plaintiffs withdrew their clause one claim). Clause one prohibits telephonic wiretapping, which does not apply to Internet transmissions. *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct.

1, 2024) (citing *Cody*, 718 F. Supp. 3d at 996); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023); *Google Assistant*, 457 F. Supp. 3d at 825.

**b. Plaintiffs do not allege a claim under the second clause of Section 631 because they fail to allege that LinkedIn read or attempted to read the contents of any communications.**

Plaintiffs assert a claim under the second clause of Section 631(a) for "intercepting" the contents of their communications with LinkedIn, but that claim fails because Plaintiffs have not adequately alleged that LinkedIn read, attempted to read, or learned the contents of the communications they claim LinkedIn intercepted. *See* Cal. Pen. Code § 631(a).

To plausibly plead a Section 631(a) claim, Plaintiffs must allege a "coherent story of how or why [the defendant] would learn . . . granular information about users of one of [*sic*] its customer's sites." *Love*, 2024 WL 2104497, *2. "Merely quoting . . . lines from the [defendant's] polic[ies] and then making broad assertions about use is not enough to state a claim under the second clause of § 631(a)." *Id*. But that is precisely what Plaintiffs do here: they quote select lines from LinkedIn's policies and informational webpages and offer nothing more to demonstrate when, how, or why LinkedIn would read, attempt to read, or learn the meaning of Plaintiffs' allegedly intercepted information. For example, Plaintiffs say that LinkedIn's Insight Tag "enable[s] in-depth campaign reporting and unlock[s] valuable insights about . . . website visitors" and that LinkedIn's "marketing solutions allow advertisers to select specific characteristics to help them reach their ideal audience," but they reference no facts suggesting that LinkedIn read or attempted to read any information it allegedly intercepted from Plaintiffs. Compl. ¶¶ 21, 27.

Nor do Plaintiffs assert facts plausibly alleging that LinkedIn learned anything from any of their communications. Indeed, Plaintiffs' pleading failure is even more fundamental: having alleged nothing about what they submitted to Covered California beyond having "filled out" unspecified "forms," they do not plausibly allege any contents of any communications that LinkedIn could attempt to learn the meaning of. Plaintiffs' allegation that "LinkedIn immediately views and processes the information and adds it to advertising data sets" does not move the needle on plausibility. Compl. ¶ 50. Without alleging facts tethered to Plaintiffs' own

experiences—such as that Plaintiffs received targeted advertisements on LinkedIn after filling out forms on the Covered California website—Plaintiffs' generalized allegation is mere speculation that falls short of alleging a "coherent story" to state their claim. *See L.B.*, 2025 WL 2899514, at *16. As this Court concluded in *L.B.*, "[w]hile it is reasonable to infer that LinkedIn uses the data it receives from the Insight Tag for its advertising services, it is not entirely clear where in that process LinkedIn would read, attempt to read, or learn the contents of Plaintiffs communications." 2025 WL 2899514, at *16. Plaintiffs have stated no such facts in their Complaint. Without "additional facts to support the inference that LinkedIn specifically read, attempted to read, or learned the contents of Plaintiffs' communications when using such information to fuel their advertising analytics," Plaintiffs have not plausibly alleged a claim under the second clause of Section 631. *Id.*

**c. Plaintiffs do not allege a claim under the second clause of Section 631 because they do not adequately allege that LinkedIn read the contents of any communications while "in transit."**

Section 631(a) requires a contemporaneous attempt to read a communication "*while* the same is in transit[.]" *Cody*, 718 F. Supp. 3d at 998 (emphasis in original) (quoting Cal. Pen. Code § 631(a)); *see also Torres v. Prudential Fin. Inc.*, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025) (in transit requirement not satisfied when the communications were intercepted and then stored on a server because the company did not read or attempt to read the communications "while they were in transit"); *Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090, at *5 (N.D. Cal. Oct. 17, 2025) (in transit requirement not satisfied where communications were intercepted, filtered, and stored because there was no attempt to read then while in transit). The allegations must demonstrate a party intercepted the communication "during [its] transmission," rather than once it was placed in electronic storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-77 (9th Cir. 2002)); *see also Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (dismissing claim where no plausible allegation of a "real-time" mechanism for intercepting communication by defendant).

Plaintiffs' allegations here suffer from the same flaws as those in *L.B.* 2025 WL 2899514,

at *16 (finding implausible allegations of "in transit" interception as "another basis for dismissing [p]laintiffs' [c]lause [t]wo claims"). To begin, Plaintiffs' allegations that Covered California "disclosed" their information to LinkedIn are plainly inconsistent with their claims that LinkedIn "intercepted" their data while it was in transit. Compl. ¶¶ 5–6, 11, 66, 69. Even setting those allegations of disclosure aside, Plaintiffs' repeated yet conclusory assertion that LinkedIn "intercepts" their data is insufficient because it fails "to explain how the software works or how the interception occurs" with respect to any specific communications. *Cody*, 718 F. Supp. 3d at 1001 (concluding that plaintiff insufficiently pled "interception" when plaintiff merely alleged that "the third-party software is 'plugged into' Ring's website" and "allows chats to be routed 'in real time ... as they occur'").

Nor do Plaintiffs allege facts about what information they provided to Covered California, how LinkedIn intercepted any of their specific communications, or how LinkedIn read any of their communications while they were in transit. Plaintiffs fail to allege which of the numerous forms they filled out on the website, what information they submitted in those forms, or specifically when they allegedly did so. *See generally* Morgan Decl. Ex. N. Their failure to allege facts about each particular Plaintiff's experience with Covered California's website is independently fatal to their CIPA claim. *See Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *2-3 (C.D. Cal. Aug. 4, 2025), appeal filed, No. 25-5438 (9th Cir. Aug. 27, 2025) (dismissing CIPA and other claims where plaintiffs' complaint included only "broad, generalized allegations about [d]efendant's full product line, while offering scant detail about [p]laintiffs' own experiences with any of them").

At most, Plaintiffs allege only conclusorily that Plaintiffs' communications with Covered California are "secretly and contemporaneously duplicat[ed]." Compl. ¶¶ 30, 50 ("contemporaneous GET request"), 82 ("contemporaneously intercepted"). But those bare legal allegations merely recite the statutory requirement that information be intercepted during transmission, and the inclusion of "simultaneously" does not make interception any more plausible. *See L.B.*, 2025 WL 2899514, at *16 (allegation that interception took place in "real time" implausible because it "d[id] not provide fair notice of exactly when or how [defendant]

intercepted the communications"); *Hammerling*, 2022 WL 17365255, at *10 (dismissing CIPA claim where plaintiffs' bare allegation that defendant "collects 'real-time data'" does not plausibly allege data collection "in transit"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [that the defendant] is intercepting [plaintiffs'] data in transit."). Plaintiffs' claim under clause two of Section 631 should be dismissed.

**d. Plaintiffs do not allege a claim under the third clause of Section 631 because it is derivative and fails for the same reasons as their claims under clauses one and two.**

To the extent Plaintiffs attempts to assert a "use" claim under the third clause, it too fails because it is derivative of their other CIPA claims. *See L.B.*, 2025 WL 2899514, at *17 (citing *Google Assistant*, 457 F. Supp. 3d at 827).

**2. Plaintiffs cannot state a Section 632 claim.**

Section 632 prohibits "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio[.]" *Google Assistant,* 457 F. Supp. 3d at 827. Plaintiffs' claim fails as a matter of law because Section 632 only applies to communications that are "confidential," and Plaintiffs have not pled what, if any, information LinkedIn allegedly intercepted, much less that it was confidential.

A communication is "confidential" under Section 632 only if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Swarts*, 689 F. Supp. 3d at 746. "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell*, 77 F. Supp. 3d at 849 (collecting cases). Accordingly, courts "have developed a presumption" that such communications do not give rise to an expectation of privacy such that Internet-based Section 632 claims generally fail. *Swarts*, 689 F. Supp. 3d at 746–47 (citation

omitted). Plaintiffs' allegations that they filled out some unspecified forms on a public website do not overcome this presumption.

The lack of plausible allegations about what information Plaintiffs transmitted to Covered California distinguishes this case from *L.B.* *See* 2025 WL 2899514, at *18 (finding that "[w]hile internet-based communications are generally not 'confidential'," plaintiffs had alleged sufficient facts about the "personal information" they offered in "search of medical services"). As discussed above, Plaintiffs' complaint is devoid of allegations regarding specific information that they each transmitted to Covered California which was allegedly intercepted by LinkedIn. Without alleging basic and knowable facts such as what "forms" they filled out or which optional questions (if any) they submitted responses to, Plaintiffs have failed to plausibly plead that they submitted any sensitive health information to Covered California. Compl. ¶¶ 47–50; *see* Morgan Decl. Ex. N. In the absence of well-pled facts establishing that information Plaintiffs submitted to Covered California was confidential, Plaintiffs have failed to overcome the presumption this Court recognized that Internet communications are "generally not 'confidential'" or that they had a reasonable expectation of privacy in those communications. *L.B.*, 2025 WL 2899514, at *18. Because Plaintiffs have failed to allege the existence of "confidential" communications as required by Section 632, their claim fails as a matter of law.

### D. Plaintiffs fail to plead a Federal Wiretap Act claim.

#### 1. Covered California consented to sharing data it collects with LinkedIn.

The consent of one party is a complete defense to liability under the Federal Wiretap Act. 18 U.S.C. § 2511(2)(d) (not unlawful to intercept a "communication" where "one of the parties to the communication has given prior consent"); *see also Pyankovska*, 65 F.4th at 1074 (noting that the Act is a "one party" consent statute). Plaintiffs allege, and materials incorporated into their Complaint establish, that *Covered California* (not LinkedIn) incorporated the LinkedIn Insight Tag on its Website and used the Insight Tag. Compl. ¶¶ 28 n. 17–18, 44–45; Morgan Decl. Ex. I–J, Q. When the "alleged interception of private health information only occurs because the health care providers cho[se] to install [LinkedIn] source code on their web properties," then "[t]his must mean the providers consented to the operation of [LinkedIn] source code." *Doe I*, 741 F.

Supp. 3d at 842. Because Covered California consented to sharing data it collects from its users by affirmatively embedding the Insight Tag into its website, and Covered California is a receiving party to any data it collects, the Federal Wiretap Act claim should be dismissed without leave to amend. *See Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (concluding that plaintiff's Federal Wiretap Act claim was "barred pursuant to the one-party consent provision" when defendant, "as the creator and operator of its website, consented to the use of data collection tools it installed on its website").

**2. Plaintiffs fail to plead the elements of a Federal Wiretap Act claim.**

Even setting aside one-party consent, Plaintiffs' Federal Wiretap Act claim fails for the independent reason that they fail to plead the elements of this claim and for all of the same reasons that require dismissal of Plaintiffs' Section 631 claim under CIPA. *See Konop*, 302 F.3d at 878 (Federal Wiretap Act requires interception to occur during "transmission"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption.").

***Not intentional.*** As described above, Plaintiffs have failed to plausibly plead that LinkedIn had the required intent to invade their privacy by intercepting their personal information. *See* Section III.A, *supra*.

***No interception.*** As described above, Plaintiffs have failed to plausibly plead that LinkedIn intercepted information during the "transmission" of a communication. *Konop*, 302 F.3d at 878; Section III.C.2.b, *supra*. This requirement is analogous to the "in transit" requirement discussed above under the California Invasion of Privacy Act (CIPA). *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (analyzing CIPA "in transit" and Wiretap Act "transmission" requirements together).

***No contents.*** Plaintiffs fail to plausibly allege that LinkedIn intercepted the "contents" of any of their communications with Covered California. Plaintiffs fail to allege what information they submitted to Covered California, much less that LinkedIn received that information. Compl. ¶¶ 8, 10 (alleging only Plaintiffs "filled out forms" and "disclosed identifying information"). And although Plaintiffs allege "the patient communication information intercepted through the

LinkedIn Insight Tag, such as pregnancy status, constituted protected health information," *id.* ¶ 73, they never allege that they submitted any such information—and materials incorporated by reference into the complaint show that no user is ever required to do so. Morgan Decl. Exs. N, Q at 2; Section II.D, *supra*. Plaintiffs thus offer no plausible allegations regarding the contents of their communications. *See King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *4–5 (S.D. Cal. June 9, 2025) (insufficient allegations of interception of "contents" on hotel website where plaintiff only alleged she submitted "guest records" but failed to "identify with specificity what information she provided on [d]efendant's Website that was intercepted by [the third party]").

Given that Plaintiffs fail to plausibly plead these elements of a Federal Wiretap Act claim, the claim must be dismissed.

### E. Plaintiffs fail to state a claim for invasion of privacy under the California Constitution.

For an invasion of privacy claim under the California Constitution, courts consider "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1074 (Cal. 2009). Plaintiffs fail to clear the "high bar" for establishing a claim for invasion of privacy. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).

***First***, Plaintiffs fail to plausibly plead a reasonable expectation of privacy under the circumstances. As a starting matter, even if Plaintiffs plausibly plead that they submitted sensitive health information to Covered California (they have not), they did so in response to questions that were optional to answer. Their choice to answer these optional questions on public webpages renders their stated expectation of privacy implausible. Even setting that aside, in the absence of allegations about what specific information Plaintiffs each disclosed to Covered California and LinkedIn intercepted, the only plausible conclusion is that LinkedIn at most received some of the generic categories of user information that Covered California expressly discloses that it may collect and LinkedIn discloses it may receive. Such conduct falls squarely

within what this Court has previously found was explicitly disclosed in LinkedIn's policies. *L.B.*, 2025 WL 2899514, at *7. Because Covered California disclosed this collection, and LinkedIn "expressly disclosed [its] intention to track [Plaintiffs'] activity on third-party [webpages]," Plaintiffs have "no reasonable expectation of privacy in that data." *Hammerling*, 2024 WL 937247, at *3; *see also Smith*, 745 F. App'x at 9 ("Knowing authorization of the practice constitutes [p]laintiffs' consent"). These disclosures bar Plaintiffs' invasion of privacy claim.

***Second***, Plaintiffs do not allege a highly offensive intrusion upon their privacy. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 865 P.2d at 655. As set forth above, *see* Section II.A–B, *supra*, website operators like Covered California install LinkedIn's Insight Tag voluntarily on their websites to collect data about user engagement; LinkedIn expressly prohibits them from installing the Tag on webpages that handle or collect any sensitive information; and LinkedIn discloses its data collection practices to users like Plaintiffs. Morgan Decl. Exs. E at § 13.2; B, I–J, Q. Plaintiffs do not allege any facts showing that they received any targeted advertisements based on any specific data collected from their use of Covered California's website—from Covered California, on LinkedIn, or otherwise. Alleging no well-pleaded facts showing what information LinkedIn collected from them specifically (as opposed to a hypothetical consumer), Plaintiffs merely provide makeweight allegations. At most, Plaintiffs allege that some routine website interaction data was collected from them on a public website, as Covered California and LinkedIn disclosed may occur. Morgan Decl. Exs. B, P.

The lack of allegations makes this case different from *L.B.* There, while the Court found that LinkedIn's alleged conduct was "not [] the same egregious systematic tracking and misrepresentations" as were at issue in other cases, the Court allowed the invasion of privacy claim to proceed because plaintiffs had provided sufficiently specific allegations that they provided third-party websites with "medically-related" data that they transmitted to LinkedIn 2025 WL 2899514, at *20; *see also id.* at *6–7 (describing plaintiffs' allegations about what information was collected by third-party websites). That is not so here. Neither Plaintiff alleges

which of the numerous forms on the Covered California website they filled out or what information they disclosed in those unspecified forms—much less that either of them submitted any health or sensitive information in response to optional questions.

Absent any plausible allegations about the information they submitted to Covered California, Plaintiffs cannot meet the threshold that plaintiffs in the related Insight Tag cases barely satisfied, putting this case more in line with *Smith* than decisions finding allegations marginally sufficient to survive a motion to dismiss. *See* 745 F. App'x at *9 (affirming dismissal of constitutional privacy claims tethered to the collection of "sensitive" health-related data because the data show[ed] only that [p]laintiffs searched and viewed publicly available health information like URLs "containing information about treatment options for melanoma, information about a specific doctor," and "search results related to the phrase 'intestine transplant'"); *see also, e.g.*, *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."); *Hammerling*, 2022 WL 17365255, at *9 (dismissing claim because defendant's collection of "granular information" from a plaintiff's interactions and searches within third-party apps on her Android smartphone amounted to "data collection of 'routine commercial behavior,' not considered a highly offensive intrusion of privacy in this district").

Plaintiffs' invasion of privacy claim against LinkedIn falls short of the "high bar" for constitutional privacy claims and should be dismissed.

## IV. CONCLUSION

LinkedIn respectfully requests that the Court dismiss all claims against it with prejudice. This consolidated complaint is already an amendment of the earlier filed *Doe* and *Hays* complaints, and any further amendment would be futile.

Dated: December 29, 2025

KEKER, VAN NEST & PETERS LLP

By: /s/ *Matan Shacham*

BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
SPENCER MCMANUS
LIAM BROWN
FLORA D. MORGAN

Attorneys for Defendant LINKEDIN CORPORATION