KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
LIAM BROWN - # 347518
liambrown@keker.com
FLORA D. MORGAN - # 359733
fmorgan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE and CYNTHIA HAYS individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:25-cv-03737-EJD<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: April 16, 2026<br>Time: 9:00 a.m.<br>Dept.: Ctrm 4 - 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>Date Filed: November 14, 2025 |

## I. INTRODUCTION

Plaintiffs Jane Doe and Cynthia Hays ("Plaintiffs") allege that Covered California, an online healthcare exchange for California residents, installed LinkedIn Corporation's ("LinkedIn") Insight Tag on its website. Compl. ¶¶ 1-2.[1] They claim Covered California used the Insight Tag to "intercept sensitive and confidential communications of Covered California customers," in violation of federal and California law. Compl. ¶ 2. LinkedIn has moved to dismiss Plaintiffs' Consolidated Complaint for failure to state a claim.

In support of its motion to dismiss, LinkedIn respectfully requests that the Court consider several documents that are referenced, relied upon, cited, and/or quoted in Plaintiffs' Consolidated Clas Action Complaint. These documents—which include LinkedIn's User Agreement, Privacy Policy, Cookie Policy, Cookie Table, Advertising Agreement, Advertising Policies, California Consumer Privacy Act Notice and incorporated terms, and pages from LinkedIn's website; and Covered California's Privacy Policy, Terms of Use, and pages from Covered California's website—are incorporated by reference into Plaintiffs' Complaint and/or subject to judicial notice for the reasons stated below.

## II. LEGAL STANDARD

Federal Rule of Evidence 201(b) governs the taking of judicial notice in the motion-to-dismiss context, permitting judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b); *see Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021). A fact is not subject to reasonable dispute when it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id*. R. 201(c)(2). It is well-established that "publicly accessible websites" are "[p]roper subjects of judicial notice." *Perkins v. LinkedIn*

[1] All foregoing references to Plaintiffs' Complaint refer to Plaintiffs' Consolidated Class Action Complaint (Dkt. No. 46).

*Corp.*, 53 F. Supp. 3d 1222, 1241 (N.D. Cal. 2014) (citing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010)). It is further well established that information displayed on the publicly available websites of government entities is properly noticeable by courts. *See Itzhaki v. U.S. Liability Ins. Comp.*, 536 F. Supp. 3d 651, 655 (C.D. Cal. 2021) (citing cases).

In addition to the doctrine of judicial notice, under the incorporation-by-reference doctrine a court may consider a document extrinsic to the complaint when addressing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) if the document's "authenticity is not contested[,] and the plaintiff's complaint necessarily relies on [it]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Parrino v. FHP Inc.,* 146 F.3d 699, 705–06 (9th Cir. 1998)) (cleaned up). A plaintiff's complaint necessarily relies on an extrinsic document "if the Plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). The Ninth Circuit has also held that quoting from a document is sufficient to incorporate a document by reference. *Daniels-Hall*, 629 F.3d at 998. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citations omitted). The Ninth Circuit has further extended this doctrine to situations in which "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted). When a document is incorporated by reference, a district court treats that document as part of the complaint and "thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

## III. DOCUMENTS SUBJECT TO THIS REQUEST

Attached to the Declaration of Flora Morgan filed concurrently herewith ("Morgan Declaration" or "Morgan Decl.") are true and correct copies of the following documents:

**<u>Exhibit A</u>: LinkedIn User Agreement**, effective as of November 3, 2025 and publicly available at: https://www.linkedin.com/legal/user-agreement. Plaintiffs allege that they consented to LinkedIn's User Agreement when they signed up for LinkedIn. Compl. ¶ 36, n. 26; s*ee also* Morgan Decl. Ex. A § 1.1 (providing that by creating a LinkedIn account or accessing its services, a user is "agreeing to enter into a legally binding contract with LinkedIn" and subject to the terms of the User Agreement).

**<u>Exhibit B</u>: LinkedIn Privacy Policy**, effective as of November 3, 2025 and publicly available at: https://www.linkedin.com/legal/privacy-policy. Plaintiffs reference language from LinkedIn's Privacy Policy and cite it throughout their complaint. Compl. ¶¶ 24, 36–39, n. 27, 30–33. Plaintiffs also allege that they consented to the Privacy Policy when they signed up for LinkedIn. Compl. ¶ 36; *see also* Morgan Decl. Ex. A § 1.1 (providing that to create an account a user must acknowledge and have read the Privacy Policy and for any visitor or member of LinkedIn's services "the collection, use, and sharing of your personal data is subject to our Privacy Policy, our Cookie Policy and other documents referenced in our Privacy Policy, and updates.").

**<u>Exhibit C</u>: LinkedIn Cookie Policy**, effective as of June 3, 2022 and publicly available at: https://www.linkedin.com/legal/cookie-policy. Plaintiffs reference language from LinkedIn's Privacy Policy and cite it in their Complaint. *See* Compl. ¶¶ 29–31, 36, n. 28, 38. Plaintiffs also allege that they consented to the Cookie Policy when they signed up for LinkedIn. Compl. ¶ 36; *see also* Morgan Decl. Ex. A § 1.1 (providing that for any visitor or member of LinkedIn's services "the collection, use, and sharing of your personal data is subject to our Privacy Policy, our Cookie Policy and other documents referenced in our Privacy Policy, and updates.").

**<u>Exhibit D</u>: LinkedIn Cookie Table,** effective as of June 9, 2025 and publicly available at: https://www.linkedin.com/legal/cookie-table. Plaintiffs reference and cite to this webpage in their Complaint. *See* Compl. ¶¶ 31–33, n. 23–25. Plaintiffs also allege that they consented to the Cookie Policy, which incorporates the Cookie Table via hyperlink, when they signed up for LinkedIn. *See* Compl. ¶ 36.; *see also* Morgan Decl. Ex. A § 1.1 (providing that for any visitor or member of LinkedIn's services "the collection, use, and sharing of your personal data is subject to our Privacy Policy, our Cookie Policy and other documents referenced in our Privacy Policy, and

updates," including the Cookie Table which is incorporated via hyperlink by the Cookie Policy).

**__Exhibit E__: LinkedIn Ads Agreement,** effective as of November 3, 2025 and publicly available at: https://www.linkedin.com/legal/sas-terms. Plaintiffs reference the business relationships that are governed by this agreement in their Complaint. Compl. ¶ 21.

**__Exhibit F__: LinkedIn Advertising Policies,** publicly available at: https://www.linkedin.com/legal/ads-policy, and **__Exhibit F1__**: **LinkedIn Advertising Policies,** which was publicly available on November 14, 2025, when Plaintiffs filed their Consolidated Complaint, as shown at: https://web.archive.org/web/20251014101937/https://www.linkedin.com/legal/ads-policy. Plaintiffs reference the business relationships that are governed by these policies in their Complaint. Compl. ¶ 21.

**__Exhibit G:__ LinkedIn California Consumer Privacy Act Notice**, publicly available at: https://www.linkedin.com/legal/california-privacy-disclosure, and **__Exhibit G1__: LinkedIn California Consumer Privacy Act Notice,** which was available on November 14, 2025, when Plaintiffs filed their Consolidated Complaint, as shown at: https://web.archive.org/web/20251113041257/https://www.linkedin.com/legal/california-privacy-disclosure. Plaintiffs cite this notice in their Complaint. Compl. ¶ 36, n. 29.

**__Exhibit H__: "What is LinkedIn and how can I use it?" webpage**, publicly available at: https://www.linkedin.com/help/linkedin/answer/a548441. Plaintiffs reference and cite to this webpage in their Complaint. Compl. ¶ 20 n. 4.

**__Exhibit I__: "Insight Tag" webpage**, publicly available at: https://business.linkedin.com/marketing-solutions/insight-tag. Plaintiffs reference and cite to information from this webpage in their Complaint. Compl. ¶¶ 27–28, nn. 17, 19–22.

**__Exhibit J__: "LinkedIn Insight Tag FAQs" webpage**, publicly available at: https://www.linkedin.com/help/lms/answer/a427660 and effective as of 3 months before the filing of this motion. Plaintiffs reference and cite to this webpage in their Complaint. Compl. ¶ 27, n. 18.

**__Exhibit K__: "LinkedIn Marketing Solutions" webpage**, publicly available at: https://business.linkedin.com/advertise. Plaintiffs reference and cite to this webpage in their

Complaint. Compl. ¶ 21.[2]

**<u>Exhibit L</u>: "Targeting on LinkedIn" packet**, publicly available at: https://business.linkedin.com/content/dam/me/business/en-us/marketing-solutions/resources/pdfs/linkedin-targeting-playbook-v3.pdf. Plaintiffs reference and cite to this webpage in their Complaint. Compl. ¶ 21.

**<u>Exhibit M</u>: "LinkedIn Ads and Marketing Solutions" webpage**, publicly available at: https://www.linkedin.com/help/lms/answer/a421454. Plaintiffs reference and cite to this webpage in their Complaint. Compl. ¶ 21.

**<u>Exhibit N–N15</u>: Covered California's Registration Process,** available at the following publicly available webpages:

1. <u>Exhibit N1</u>: "What is Covered California" webpage, available at: https://www.coveredca.com/what-is-covered-california/;
2. <u>Exhibit N2</u>: "Get Started" webpage, available at: https://www.coveredca.com/get-started/;
3. <u>Exhibit N3</u>: "This isn't an application for health coverage" pop-up, which appears on the screen after clicking "See My Results" on the "Shop and Compare" webpage, available at: https://apply.coveredca.com/lw-shopandcompare/;
4. <u>Exhibit N4</u>: "Shop and Compare" webpage, available at: https://apply.coveredca.com/lw-shopandcompare/;
5. <u>Exhibit N5</u>: "See My Results" Button on "Shop and Compare" webpage, available at: https://apply.coveredca.com/lw-shopandcompare/;
6. <u>Exhibit N6</u>: "My Options" webpage, available at: https://apply.coveredca.com/lw-shopandcompare/screening-results;
7. <u>Exhibit N7</u>: "Health Plan Preferences" webpage, available at: https://apply.coveredca.com/static/lw-enrollment/anon/preferences/plan-preferences/wJtOo15dQIRU2hDQrnrVRiH3aBOVhQmCFZ-ra7xQ01E;

[2] Plaintiffs cite to https://business.linkedin.com/marketing-solutions, which reroutes to https://business.linkedin.com/advertise.

8. Exhibit N8: "Provider Preferences" webpage, available at: https://apply.coveredca.com/static/lw-enrollment/anon/preferences/provider-preferences/wJtOo15dQIRU2hDQrnrVRiH3aBOVhQmCFZ-ra7xQ01E;

9. Exhibit N9: "Your Health Plan Filters" pop-up which appears on the screen after clicking the "Next" button on the "Provider Preferences" webpage, available at: https://apply.coveredca.com/static/lw-enrollment/anon/shop-plan/health/yb41ykoXoRAnDDtTN9iWJcQYxCRWUroj-ahTLitIPwg;

10. Exhibit N9A: "Choose a Health Plan" webpage, available at: https://apply.coveredca.com/static/lw-enrollment/anon/shop-plan/health/wJtOo15dQIRU2hDQrnrVRiH3aBOVhQmCFZ-ra7xQ01E;

11. Exhibit N10: "Start an Application" webpage, available at: https://apply.coveredca.com/static/lw-web/account-creation/choose-application;

12. Exhibit N11: "Create an Account to Apply" webpage, available at: https://apply.coveredca.com/static/lw-web/account-creation/create;

13. Exhibit N12A: "Please Review Your Information" webpage, available at: https://apply.coveredca.com/static/lw-web/account-creation/review;

14. Exhibit N12B: "Welcome" webpage, available at: https://apply.coveredca.com/static/lw-web/account-home;

15. Exhibit N12C: "Which Year Would You Like to View?" webpage, available at: https://apply.coveredca.com/static/lw-web/choose-enrollment-year;

16. Exhibit N12D: "Welcome to Your Application" webpage, available at: https://apply.coveredca.com/static/lw-web/application-start;

17. Exhibit N12E: "Would you like to see if you can benefit from free or low cost health care?" webpage, available at: https://apply.coveredca.com/static/lw-web/application-start/opt-in;

18. Exhibit N12F: "Application Menu" webpage, available at: https://apply.coveredca.com/static/lw-web/application-menu;

19. Exhibit N12G: "Household Form" webpages, available at: https://apply.coveredca.com/static/lw-web/application-menu; https://apply.coveredca.com/static/lw-web/household/build; https://apply.coveredca.com/static/lw-web/household/add/basic-info; https://apply.coveredca.com/static/lw-web/household/add/enc-wwDRyc5gEY4YVtVgRMRZoAX8GF23vMACHYhPwsFkDXQ=/basic-info3; https://apply.coveredca.com/static/lw-web/household/add/enc-wwDRyc5gEY4YVtVgRMRZoAX8GF23vMACHYhPwsFkDXQ=/basic-info4; https://apply.coveredca.com/static/lw-web/household/add/enc-wwDRyc5gEY4YVtVgRMRZoAX8GF23vMACHYhPwsFkDXQ=/basic-info5; https://apply.coveredca.com/static/lw-web/household/add/enc-wwDRyc5gEY4YVtVgRMRZoAX8GF23vMACHYhPwsFkDXQ=/basic-info6; https://apply.coveredca.com/static/lw-web/household/add/enc-wwDRyc5gEY4YVtVgRMRZoAX8GF23vMACHYhPwsFkDXQ=/alternative-format; https://apply.coveredca.com/static/lw-web/household/add/enc-wwDRyc5gEY4YVtVgRMRZoAX8GF23vMACHYhPwsFkDXQ=/optional-questions; https://apply.coveredca.com/static/lw-web/household/add/enc-wwDRyc5gEY4YVtVgRMRZoAX8GF23vMACHYhPwsFkDXQ=/sogi-questions; https://apply.coveredca.com/static/lw-web/household/build; https://apply.coveredca.com/static/lw-web/household/begin; https://apply.coveredca.com/static/lw-web/household/information/sls-attestation; https://apply.coveredca.com/static/lw-web/household/information/primary-contact; https://apply.coveredca.com/static/lw-web/household/information/home-mailing-address;

20. Exhibit N12H: "Verification of Your Information" webpage, available at: https://apply.coveredca.com/static/lw-web/household/information/confirm-identity;

21. Exhibit N12I: "Forms and Documents" webpage, available at: https://apply.coveredca.com/support/forms/;

22. Exhibit N13: "General Hardship Exemption" webpage, available at: https://www.coveredca.com/learning-center/tax-penalty-details-and-exemptions/general-hardship/.

23. Exhibit N14: "Affordability Hardship Exemption" webpage, available at: https://www.coveredca.com/learning-center/tax-penalty-details-and-exemptions/affordability-hardship/.

24. Exhibit N15: "Religious Conscience Exemption" webpage, available at: https://www.coveredca.com/learning-center/tax-penalty-details-and-exemptions/religious-conscience/.

Plaintiffs repeatedly refer to these webpages in their Complaint. *See, e.g.*, Compl. ¶¶ 7–8, 10, 45–51.

**Exhibit O: Covered California's Privacy Policy,** available at: https://www.coveredca.com/privacy/. Plaintiffs reference this policy, and the webpages where website visitors must accept it, in their Complaint. Compl. ¶¶ 42–50.

**Exhibit P: Covered California's Terms of Use,** available at: https://www.coveredca.com/privacy/terms. Plaintiffs reference this policy, and the webpages where website visitors must accept it, in their Complaint. Compl. ¶¶ 42–50.

**Exhibit Q: The Markup article** published on April 28, 2025, "How California sent resident's personal health data to LinkedIn," available at: https://themarkup.org/pixel-hunt/2025/04/28/how-california-sent-residents-personal-health-data-to-linkedin. Plaintiffs reference this article and cite it in support of the claims in their Complaint. Compl. ¶¶ 44–49.

## IV. ARGUMENT

### A. Plaintiffs incorporated by reference Exhibits A–Q to allege that LinkedIn and Covered California violated their privacy rights.

Plaintiffs incorporate LinkedIn's User Agreement (Ex. A), Privacy Policy (Ex. B), Cookie Policy (Ex. C), and Cookie Table (Ex. D) into their Complaint. Plaintiffs concede that they consented to these agreements when they signed up to become LinkedIn members. Compl. ¶ 36, nn. 26–28. For example, Plaintiffs quote LinkedIn's admonition in its Privacy Policy that it uses

"cookies and similar technologies (e.g. pixels and ad tags) to collect data (e.g. device IDs) to recognize you and your device(s) on, off and across different services and devices where you have engaged with our Services" and that LinkedIn will "allow some others to use cookies as described in [the] Cookie Policy." Compl. ¶ 38. Plaintiffs rely on provisions of these policies to allege that despite LinkedIn's disclosed data practices, it "intentionally intercepts and receives sensitive and unlawfully-disclosed information in violation of state and federal privacy laws." Compl. ¶ 40. Plaintiffs also reference these policies in support of their allegation that "LinkedIn never receives consent from users to intercept and collect electronic communications containing their sensitive and unlawfully-disclosed information" and that "LinkedIn expressly warrants the opposite." Compl. ¶ 35. Plaintiffs likewise refer and cite to LinkedIn's Insight Tag (Ex. I) and Insight Tag FAQs webpages (Ex. J) to characterize how the technology works. *See* Compl. ¶ 27–28, nn. 17–19. Because Plaintiffs reference, necessarily rely upon, and directly quote from these webpages to state their claims against LinkedIn, they are incorporated by reference. *See Lee*, 250 F.3d at 688; *Ritchie*, 342 F.3d at 908.

Plaintiffs further incorporate LinkedIn's Cookie Table (Ex. D), California Consumer Privacy Act Notice (Ex. G–G1), Insight Tag webpage (Ex. I), Insight Tag FAQs (Ex. J), Marketing Solutions webpage (Ex. K), Targeting on LinkedIn packet (Ex. L), LinkedIn's Ads and Marketing Solutions webpages (Ex. M), and forms on the Covered California website (Ex. N) into their Complaint, cherry-picking information from these webpages and paraphrasing their language to bolster their allegations about how LinkedIn and the Insight Tag operate, in addition to how LinkedIn and third-party advertising entities, like Covered California, collect information about website visitors. *Khoja*, 899 F.3d at 1002 ("The doctrine [of incorporation by reference] prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."). For example, Plaintiffs selectively reference information from LinkedIn's Cookie Table that explains how the li_sugr and lms_ads cookies operate, Compl. ¶¶ 32–34, while ignoring that the Cookie Table provides "information about the cookies that LinkedIn uses on third party sites including when LinkedIn's Insight Tag is installed on our customers sites." Morgan Decl. Ex. D. Drawing on information

from LinkedIn's Insight Tag and Insight Tag FAQ page, Plaintiffs further allege that LinkedIn collects information like "an individual's first and last name, place of work, contact information, and other personal details" "to target its account holders for advertising," but omits LinkedIn's disclosures on those very pages regarding its pro-privacy data practices, including specifically, that "LinkedIn members can control the use of their personal data for advertising purposes through their account settings." Compl. ¶ 34; Morgan Decl. Exs. I–J. Because Plaintiffs reference and necessarily rely upon information from these materials to state their claims against LinkedIn, they are incorporated by reference. *See Lee*, 250 F.3d at 688; *Ritchie*, 342 F.3d at 908; *Della v. Colgate-Palmolive Co.*, 2024 WL 457798, at *16 (N.D. Cal. Feb. 6, 2024) ("Plaintiffs sufficiently rely on the Product websites to justify applying the doctrine of incorporation by reference to the websites as a whole, even if the specific webpages offered by Colgate are not expressly referenced in the FAC."); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *4 (N.D. Cal. Sept. 26, 2024) (incorporating by reference "welcome screens" that are "not referred to extensively in the complaint" because "whether Apple disclosed its collection practices and whether Plaintiffs consented to those collection practices" through those screens "relate" to plaintiff's claims).

Through referencing LinkedIn's various marketing solutions webpages, Plaintiffs incorporate the policies that govern these marketing business relationships—namely, LinkedIn's Advertising Agreement (Ex. E) and Advertising Policies (Ex. F–F1)—into their Complaint. Compl. ¶¶ 21, nn. 5, 7–9. Although Plaintiffs "[do] not explicitly allege the contexts of" these agreements, they nonetheless incorporate these agreements by highlighting the tools LinkedIn offers to its marketing partners, like Covered California, without referencing the guidelines LinkedIn gives to those customers as a requirement to use its products. *See Knievel*, 393 F.3d at 1076; *Khoja*, 899 F.3d at 1002. Plaintiffs state in their Complaint that LinkedIn's Marketing Solutions "allow potential advertisers to '[b]uild strategic campaigns' targeting specific users." Compl. ¶ 21. But Plaintiffs fail to reference the guardrails LinkedIn has created to give advertisers access to these solutions, such as "[y]ou may not target Ads based on Sensitive Data" and "[y]ou will also not transfer to LinkedIn any data that you know or reasonably should know . . . constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects

medical, financial, or other Sensitive Data about identified or identifiable individuals." *See* Morgan Decl. Ex. E. Plaintiffs' claims necessarily "depend[] on the contents of" LinkedIn's Advertising Agreement and Advertising Policy which govern advertisers' interaction with and relationship to the platform's business tools, like the Insight Tag. *Knievel*, 393 F.3d at 1076. In a related case concerning identical policies, the Court found earlier versions of these agreements were incorporated by reference.[3] *See L.B. v. LinkedIn Corporation*, 2025 WL 2899514, *1, n. 2 (N.D. Cal. Oct. 10, 2025). These agreements and policies are thus proper for incorporation by reference under Ninth Circuit precedent. *Knievel*, 393 F.3d at 1076; *Swartz*, 476 F.3d at 763.

Also integral to Plaintiff's claims and incorporated in their Complaint are Covered California's Privacy Policy and Terms of Use, the April 28, 2025 article from *The Markup* referencing Covered California's use of the Insight Tag, and the sequence of webpages that contain Covered California's online registration and application process. Morgan Decl. Exs. N–Q. Plaintiffs' allegation that Covered California installed LinkedIn's Insight Tag on its website, resulting in LinkedIn collecting the information Covered California website visitors entered while shopping for health insurance, is central to this lawsuit. *See* Compl. ¶¶ 1, 6, 8, 10, 35, 45–51. Plaintiffs consequently rely on the contents of the Covered California webpages when they allege that they entered "sensitive information" to complete Covered California's online forms Compl. ¶¶ 7–8, 10, 41. Yet, they selectively characterize the information requested on these forms to buoy their claims that the information was "sensitive and unlawfully-disclosed information," while neglecting to acknowledge that ***all the health-related information requested on these forms is optional***. Compl. ¶¶ 35, 45; *See* Morgan Decl. Exs. N1–N15. Plaintiffs allege verbatim claims to those included in the April *The Markup* article, including that "[a]s visitors filled out forms on the website, trackers on the same pages told LinkedIn their answers to questions about whether they were blind, pregnant, or used a high number of prescription medications" and "whether the visitors said they were transgender or possible victims of domestic abuse." Compl. ¶ 45; Morgan Decl.

[3] The language in the earlier versions of the Advertising Agreement and Advertising Policies that the Court found were incorporated by reference in *L.B. v. LinkedIn Corp.* do not differ with respect to the provisions relevant to LinkedIn's motion to dismiss this case.

Ex. Q. But these allegations fail to acknowledge that the fields requesting this information are either expressly marked as "Optional" on the Covered California website or did not need to be filled out. Compl. ¶¶ 45; *See* Morgan Decl. Ex. N. Finally, Plaintiffs' claims that they and other putative class members "never choose to provide sensitive information to LinkedIn" or otherwise consent to sharing information with LinkedIn, put the process by which they and others provided that information and, to what extent they agreed to share such information under the terms of the Covered California Privacy Policy and Terms of Use, squarely at issue in this case. Compl. ¶ 41. By referencing, citing to, and necessarily relying upon information from these materials to state their claims against LinkedIn, Plaintiffs similarly incorporate by reference the Covered California registration webpages, Privacy Policy and Terms of Use, and *The Markup* article. *See Lee*, 250 F.3d at 688; *Ritchie*, 342 F.3d at 908; *Della*, 2024 WL 457798, at *16; *Libman*, 2024 WL 4314791, at *4.

**B. Exhibits A–Q are publicly available websites and judicially noticeable.**

In addition to being incorporated by reference, Exhibits A–Q are judicially noticeable as publicly available webpages and are not subject to reasonable dispute. *See* Fed. R. Evid. 201(b). "In general, websites and their contents may be judicially noticed." *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *9 (N.D. Cal. Mar. 31, 2023), *aff'd*, 2024 WL 1693340 (9th Cir. Apr. 19, 2024) ("[E]xhibits are . . . judicially noticeable as publicly available articles.") (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999)); *Hammerling v. Google LLC*, 2022 WL 17365255, at *4 (N.D. Cal. Dec. 1, 2022) ("[W]ebpages . . . are regularly the subject of judicial notice in this circuit."). For that reason, courts in this District regularly take judicial notice of publicly available websites and their contents, including "privacy policies" and "terms of service." *E.g.*, *Zhang v. Twitter Inc.*, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023); *see also, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343, at *3–4 (N.D. Cal. Dec. 28, 2012) (Google's "past and present" Privacy Policies); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (Twitter's Terms of Service); *Datel Holdings, Ltd. v. Microsoft Co.*, 712 F.Supp.2d 974, 983–84 (N.D. Cal. 2010) (Microsoft's Xbox Terms of Use);

*Pica v. Delta Air Lines, Inc.*, 2018 WL 5861362, at *5 (C.D. Cal. Sept. 18, 2018) ("[T]he Court takes judicial notice of the Privacy Policy as 'matters of public record outside the pleadings that are not subject to reasonable dispute.'"); *Erickson v. Neb. Machinery Corp.*, 2015 WL 4089849, at *1, n. 1 (N.D. Cal. Jul. 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine has facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Parziale v. HP, Inc.*, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) (taking judicial notice of webpages from the Wayback Machine in order to grant defendant's motion to dismiss). Exhibits A–Q are thus judicially noticeable.

## V. CONCLUSION

LinkedIn respectfully requests that the Court grant its request to judicially notice and incorporate by reference the foregoing documents in support of its motion to dismiss.

Dated: December 29, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Matan Shacham*

BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
SPENCER MCMANUS
LIAM BROWN
FLORA D. MORGAN

Attorneys for Defendant LINKEDIN CORPORATION