**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jwilner@bursor.com

**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (State Bar No. 236805)
ekim@lcllp.com
Tiffine E. Malamphy (State Bar No. 312239)
tiffine@lcllp.com
117 E Colorado Blvd., Ste 600
Pasadena, CA 91105-3712
Telephone: (213) 723-0707
Facsimile: (858) 313-1850

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JANE DOE and CYNTHIA HAYS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:25-cv-03737-EJD

**PLAINTIFFS' OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS**

Date: April 16, 2026
Time: 9:00 a.m.
Ctrm: 4 – 5th Floor
Judge: Hon. Edward J. Davila

## TABLE OF CONTENTS

PAGE(S)


INTRODUCTION .......... 1

ARGUMENT .......... 3

I. PLAINTIFFS ALLEGE LINKEDIN INTENTIONALLY INVADED THEIR PRIVACY .......... 3

II. PLAINITFFS DID NOT CONSENT TO LINKEDIN'S CONDUCT .......... 4

III. PLAINTIFFS ALLEGE VIOLATIONS OF CIPA § 631 .......... 5

A. Plaintiffs allege LinkedIn "Read" or "Attempted to Read" Their Communications .......... 5

B. Plaintiffs Allege Their Communications Were Intercepted In Transit .......... 6

C. Plaintiffs State A CIPA Claim For Defendant's Use Of Their Communications .......... 9

IV. PLAINTIFFS SUFFICIENTLY ALLEGE A VIOLATION OF CIPA § 632 .......... 9

V. PLAINTIFFS SUFFICIENTLY ALLEGE A VIOLATION OF THE ECPA .......... 11

A. Defendant Is Liable Under The "Crime-Tort Exception" In The ECPA .......... 11

B. Defendant's Remaining Arguments Do Not Warrant Dismissal .......... 12

VI. PLAINTIFFS SUFFICIENTLY ALLEGE INTRUSION UPON SECLUSION .......... 13

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 11, 12, 14

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 13

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 14

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........ 7

*Doe v. Call-On-Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ........ 2

*Doe v. Eating Recovery Center LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 8

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) ........ 8

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 11

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 14

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 8

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 12

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ........ 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 13

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 4

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ passim

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ........ 7, 12

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ passim

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ........ 11

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 6

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ........ 13

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 13

*Ribas v. Clark*,
696 P.2d 637 (Cal. 1985) ........ 8

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 2, 12

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 14

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ........ 14

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ........ 2, 7, 12

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ........ 2, 7, 12

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 2, 11

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 3

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 3

*Smith v. Rack Room Shoes, Inc.*,
2026 WL 183852 (N.D. Cal. Jan. 23, 2026) ........ 2, 8

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 8, 12

*Stasi v. Inmediata Health Group Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 14

**STATUTES**

18 U.S.C. § 2511(d) .......... 11

Cal. Pen. Code § 631 .......... passim

**RULES**

Fed. R. Civ. P. 9(b) .......... 5

Fed. R. Civ. P. 12(b)(6) .......... 6

Plaintiffs Jane Doe and Cynthia Hays ("Plaintiffs") respectfully submit this opposition to Defendant LinkedIn Corporation's ("Defendant" or "LinkedIn") Motion to Dismiss Plaintiffs' Consolidated Complaint (ECF No. 49) (the "Motion" or "MTD").

**INTRODUCTION**

This is one of many cases involving tracking technology intercepting private health information on healthcare and insurance websites. However, the conduct at issue is particularly egregious here because Defendant intentionally intercepted sensitive health and demographic information from Covered California, "a website where Californians can shop for health insurance under the Affordable Care Act." Plaintiffs' Consolidated Class Action Complaint (ECF No. 46) (the "Complaint" or "Compl.") ¶ 42. On April 28, 2025, The Markup, a nonprofit news organization, published an article detailing how Covered California transmitted users' personal health data to LinkedIn as part of a marketing campaign that began in February 2024. *Id*. ¶ 44. This data was unlawfully intercepted via LinkedIn's Insight Tag, a piece of code that allows LinkedIn to receive simultaneous transmissions of users' actions on websites, including users' information sent to Covered California to apply for health insurance. *Id*. ¶¶ 27-29. "Transmissions from users' browsers to LinkedIn through the LinkedIn Insight Tag occur in the same manner on each website where the technology is loaded. When an action is taken on a website, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. LinkedIn's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening. LinkedIn causes the browser to secretly and contemporaneously duplicate the communication with a website transmitting it to LinkedIn's servers, alongside additional information that transcribes the communication's content and the individual's identity. This transmission is initiated by LinkedIn's code and concurrent with the communications with the host website." *Id*. ¶ 30.

This is exactly what happened to Plaintiffs and Class Members. "As visitors filled out forms on the [Covered California] website, trackers on the same pages told LinkedIn their answers to questions about whether they were blind, pregnant, or used a high number of prescription medications. The trackers also monitored whether the visitors said they were transgender or

possible victims of domestic abuse," their selected medical provider, ethnicity, and more. *Id.* ¶¶ 45-48. "When filling out forms on the Website, Plaintiff[s] disclosed identifying information" that was intercepted by the LinkedIn Insight Tag. *Id.* ¶ 8. The purpose for the interceptions is clear: "LinkedIn immediately views and processes the information and adds it to advertising data sets," which fuel LinkedIn's multi-billion-dollar advertising service. *Id.* ¶ 50. Worse still, LinkedIn adds this information to its advertising databases while telling its users that it "will only collect and process personal data about you where we have lawful bases," giving its consumers no reason to expect their most sensitive data will be intercepted while they apply to access healthcare. *Id.* ¶ 39.

This Court has already denied a motion to dismiss CIPA § 632 claims against LinkedIn based on interceptions by the LinkedIn Insight Tag on health-related websites (*L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *13 (N.D. Cal. Oct. 10, 2025)), and numerous courts have denied motions to dismiss CIPA and ECPA claims based on similar technology. *See*, *e.g.*, *Smith v. Rack Room Shoes, Inc.*, 2026 WL 183852, at *1 (N.D. Cal. Jan. 23, 2026) ("*Rack Room III*"); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025); *Semien v. PubMatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025); *Doe v. Call-On-Doc, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025).

LinkedIn's Motion largely attempts to resolve disputed facts at the pleadings stage and asks the Court to depart from the vast majority of caselaw finding allegations like Plaintiffs' are sufficient to state a claim for violation of the CIPA and ECPA. The Complaint alleges clearly that LinkedIn knew what information it was intercepting from the Covered California website and incorporated that information into its advertising databases. Compl. ¶ 30. Further, LinkedIn's interception of legally protected information, contrary to its own policies and representations, creates a disputed issue of fact as to whether Plaintiffs and Class Members consented to private health and demographic information being exposed to LinkedIn. The Complaint also sufficiently alleges that the "contents" of Plaintiffs' communications (their selections on the forms) were intercepted "in transit" in violation of CIPA § 631(a). The Complaint states a CIPA § 632 claim because Plaintiffs were "providing personal information in search of medical services" which

"could at least support a reasonable expectation that this information will be kept confidential." *L.B.*, 2025 WL 2899514, at *13. LinkedIn's consent defense to Plaintiffs' ECPA claims fail because it is subject to the ECPA's crime-tort exception for its violations of CIPA, HIPAA, and common law. Compl. ¶ 110. Finally, Defendant's claim that its interception of highly sensitive health and demographic information is not "highly offensive" in violation of the California Constitution and common law simply does not make sense.

For the following reasons, Defendant's motion should be denied.

## ARGUMENT

### I. PLAINTIFFS ALLEGE LINKEDIN INTENTIONALLY INVADED THEIR PRIVACY

Defendant argues "LinkedIn could not have intended to collect through the Insight Tag any health data from Covered California users" because of language in LinkedIn's Ads Agreement. MTD at 12. This is wrong.

This Court has already considered this issue with respect to the very policies LinkedIn attempts to rely on here. In *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *13 (N.D. Cal. Oct. 10, 2025), the Court weighed the competing authority analyzing whether Defendant could rely on a disclaimer in its terms of use when it had received protected information in violation of those terms. The Court found:

> In Acknowledging this apparent split in authority, the Court agrees with what is currently the majority rule. That is, the Court declines to hold that LinkedIn's Ads Agreement and Advertising Policies are entirely dispositive of its intent at the pleadings stage. Plaintiffs' allegations create a reasonable inference that the purpose of the Insight Tag is for LinkedIn to collect confidential data from users in violation of their privacy rights. Though that inference is relatively weak in light of LinkedIn's policies to the contrary and the absence of specific facts concerning how LinkedIn uses the data it allegedly receives from the Insight Tag, the question of intent should be considered on a more developed record. Accordingly, Plaintiffs have adequately alleged intent in their complaints.

*Id.*; *see also Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) ("While Google argues that judicially noticeable policy documents suggest that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that the Court cannot resolve at this stage."); *Smith v.*

*Rack Room Shoes, Inc.* ("*Rack Room I*"), 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) ("[I]t is plausible to infer from Rack Room's alleged affirmative act of integrating the third-party code into its website that it knew Meta and Attentive would intercept personally identifiable information and that Rack Room had the purpose of employing Meta and Attentive to do so.").

The same is true here. Plaintiffs allege that LinkedIn collected their identifying information and sensitive health information in violation of its own policies. Compl. ¶ 40 ("despite this explicit representation, LinkedIn intentionally intercepts and receives sensitive and unlawfully disclosed information in violation of state and federal privacy laws."); *id*. ¶ 11 ("Defendant LinkedIn, as the creator of its software and the LinkedIn Insight Tag, knew that it intercepted each of a users' interactions on the Website that incorporated its technology. Defendant LinkedIn is well aware of the dangers of incorporating such technology on websites that offer medical and health services, but continues to do so").

This is especially true for the conduct at issue in this matter, which allegedly took place from February 2024 to March 2025. *Id*. ¶¶ 44, 46. The *L.B.* complaint was filed on August 20, 2024, meaning LinkedIn continued to collect sensitive health information in violation of its own policies *for at least 6 months* after facing a lawsuit for the same conduct. *L.B.*, 2025 WL 2899514 at *13; *see In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (""[I]nterceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action."). In addition, the Markup reported that Covered California was working with LinkedIn on advertising campaigns, meaning LinkedIn was actively participating in the implementation of the Pixel and the use of the intercepted information. Compl. ¶ 44. Thus, at minimum, a more developed factual record is required to determine if Defendant acted in any way after being informed that it was collecting sensitive health information through its pixel.

## II. PLAINITFFS DID NOT CONSENT TO LINKEDIN'S CONDUCT

Defendant next argues, "[w]ithout plausible allegations that Plaintiffs submitted sensitive information, the only reasonable inference is that Plaintiffs submitted some generic website interaction data to Covered California, the collection of which was exactly what Covered

California and LinkedIn disclosed would occur in its policies." MTD at 15. This is wrong for multiple reasons.

First, Plaintiffs allege their private information *was* disclosed. Defendant seeks to require that Plaintiffs disclose sensitive information in the Complaint, but that is unnecessary. The Markup found that "[a]s visitors filled out forms on the website, trackers on the same pages told LinkedIn their answers to questions[.]" Compl. ¶ 45. The Complaint goes on to show numerous examples of the type of information collected, including pregnancy status and other health information that is necessary to apply for insurance on the site. *Id.* ¶¶ 46-50. Plaintiffs allege they also "filled out forms on the Covered California website," creating a reasonable inference that their information was intercepted by LinkedIn in the same manner. *Id.* ¶ 8. Plaintiffs have thus sufficiently alleged their private information was intercepted.

Second, "Courts have often found a lack of consent when the type of data collected, though conceivably included in the disclosure, falls outside the plaintiffs' reasonable expectations." *L.B.*, 2025 WL 2899514, at *6; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 784-85 (N.D. Cal. 2022). "Here, Plaintiffs provided specific information about themselves while in search of medical services. And while some of this information—i.e., name, age, date of birth, []—may not be considered medical or private in isolation, the combination of these details and the fact that they were provided in the context of seeking medical services could place the data outside users' reasonable expectations of what LinkedIn collects." *L.B.*, 2025 WL 2899514, at *6. Thus, it is "inappropriate to determine at this stage whether the information is so sensitive that there is no reasonable expectation it would be disclosed pursuant to LinkedIn's policy as a matter of law." *Id.*[1]

## III. PLAINTIFFS ALLEGE VIOLATIONS OF CIPA § 631

### A. Plaintiffs allege LinkedIn "Read" or "Attempted to Read" Their Communications

Defendant argues that Plaintiffs "reference no facts suggesting that LinkedIn read or

[1] Defendant claims Plaintiffs are subject to Rule 9(b) but does not articulate what part of the alleged fraud it is not on notice of. The only citation Defendant provides in support, a footnote in *L.B.*, found that "without allegations of fraud in Plaintiffs' complaints, the Court need not reach this issue for purposes of this Order." 2025 WL 2899514, at *13, n.10. Plaintiffs similarly do not bring fraud claims here.

attempted to read any information it allegedly intercepted from Plaintiffs." MTD at 17. This ignores Plaintiffs' allegations.[2]

The Complaint describes in detail how the LinkedIn Insight Tag intercepts communications on the Covered California website and how that information, consistent with LinkedIn's business model, is used by LinkedIn to target advertising. Compl. ¶ 22 ("As a result of its activities and operation of the LinkedIn Insight Tag, LinkedIn is able to make extremely personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more."), *id.* ¶ 23 ("The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network."), *id.* ¶ 27 ("LinkedIn represents that the LinkedIn Insight Tag 'enable[s] in-depth campaign reporting and unlock[s] valuable insights about your website visitors'"). Plaintiffs further specify that "LinkedIn intercepts each piece of medical information via a contemporaneous GET request as each piece of information is entered into the Covered California website. LinkedIn immediately views and processes the information and adds it to advertising datasets, as described [in the Complaint]." *Id.* ¶ 50. This this distinguishes the Complaint from those in *L.B.*, where it was "not entirely clear where in that process LinkedIn would read, attempt to read, or learn the contents of Plaintiffs' communications." 2025 WL 2899514, at *16. As the Court noted, "[e]xacting detail of LinkedIn's data processing is not necessary to survive dismissal under Rule 12(b)(6)." *Id.*

### B. Plaintiffs Allege Their Communications Were Intercepted In Transit

Defendant argues that Plaintiffs "do not adequately allege that LinkedIn read the contents of any communications while 'in transit.'" MTD at 18. This is wrong.

"While a plaintiff must do more than merely restate the pleading requirement of real time interception, the standard is not overly burdensome. For instance, allegations that communications are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (cleaned up). "[A] pleading standard to the contrary would require the CIPA

[2] Plaintiffs bring claims under Clauses Two and Three of CIPA § 631(a).

plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023).

Here, the Complaint contains exactly such allegations. The operation of the LinkedIn Insight Tag and what information it collects is described in great detail. Compl. ¶¶ 20-35. The Complaint then alleges:

> "Transmissions from users' browsers to LinkedIn through the LinkedIn Insight Tag occur in the same manner on each website where the technology is loaded. When an action is taken on a website, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage…LinkedIn causes the browser to secretly and contemporaneously duplicate the communication with a website transmitting it to LinkedIn's servers, alongside additional information that transcribes the communication's content and the individual's identity. This transmission is initiated by LinkedIn's code and concurrent with the communications with the host website."

*Id.* ¶ 30.

The Complaint then provides multiple examples of this process occurring. *Id.* ¶¶ 47-50 (screenshots of specific selections on the Covered California website intercepted by the LinkedIn Insight Tag). Nothing more is required at this stage. *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) ("Plaintiffs allegations are not conclusory. The Complaint contains a detailed description of the pixel and related technology at issue, including screenshots of the source code. Complaint adequately alleges that the interceptions occurred in transit.") (internal citations omitted); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *8 (N.D. Cal. Jan. 27, 2026) (The complaint includes detailed descriptions of how PubMatic's pixel technology purportedly works ... The complaint alleges that after the PubMatic pixel is loaded onto a user's browser, then it 'surreptitiously intercepts' the URL 'for each page of each website visited by the individual.'") (internal citations omitted); *Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *7 (N.D. Cal. Jan. 27, 2026) ("OpenX's 'interceptions' occurred while users communicated with websites through their browsing activities. While OpenX may be able to show that it does not actually intercept any communications in transit, that factual dispute is not appropriately resolved here.").

*L.B.* is again distinguishable in this manner. There, the plaintiffs did "not explicitly allege this 'real time' theory in their complaints. Instead, Plaintiffs generally allege[d] that the Insight Tag sends LinkedIn data '[w]hen a user who has signed in to LinkedIn ... is browsing a website.'" Here, the Complaint shows which data is transmitted to LinkedIn and when the transmission takes place. *See*, *e.g.*, Compl. ¶ 47 ("when an individual indicated they were pregnant, the information was sent to LinkedIn via the Insight Tag."); *id.* ¶ 30 ("This transmission is initiated by LinkedIn's code and concurrent with the communications with the host website.").

*Doe v. Eating Recovery Center LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) is also inapposite. First, *Eating Recovery* is a summary judgment ruling, which was decided after the benefit of discovery. The court had previously denied a motion to dismiss, finding "the complaint contains multiple allegations that Meta's 'transmission of information through the Pixel is instantaneous' and that Meta's code redirects users' communications 'simultaneously as the actions and communications on the website take place.'" *Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024). Second, while the *Eating Recovery* summary judgment order describes that court's issues with perceived ambiguities in the language of § 631(a), other courts in this District have no trouble applying the statute to internet technologies, especially "because the California legislature stated that the purpose of CIPA's wiretapping provision was to better address 'new devices and techniques' that create a 'serious threat to the free exercise of personal liberties.' California courts have interpreted that directive as requiring a functional rather than hyper-technical approach that broadly applies the statute to new technologies." *Smith v. Rack Room Shoes, Inc.*, 2026 WL 183852, at *3 (N.D. Cal. Jan. 23, 2026) (citing *Ribas v. Clark*, 696 P.2d 637, 639-41 (Cal. 1985)) (internal citation omitted); *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024) ("[T]he key to the interception analysis is whether the plaintiff alleges that transmission was simultaneous."); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("Courts have held allegations of simultaneous duplication and interception of communications sufficient to plead "interception" while "in transit" under CIPA at the motion to dismiss stage.").

### C. Plaintiffs State A CIPA Claim For Defendant's Use Of Their Communications

Defendant argues "[t]o the extent Plaintiffs attempts to assert a 'use' claim under the third clause, it too fails because it is derivative of their other CIPA claims." MTD at 20. As described above, Plaintiffs adequately allege a violation of Clause Two. Argument §III.A-B. The Complaint is full of allegations that LinkedIn used the information it intercepted to target advertising. Compl. ¶ 50 ("LinkedIn immediately views and processes the information and adds it to advertising datasets."); *id.* ¶ 34 ("Based on the information it obtains through the LinkedIn Insight Tag, Defendant LinkedIn is able to target account holders for advertising.").

## IV. PLAINTIFFS SUFFICIENTLY ALLEGE A VIOLATION OF CIPA § 632

Defendant claims that Plaintiffs' CIPA § 632 claim fails because "Plaintiffs have not pled what, if any, information LinkedIn allegedly intercepted, much less that it was confidential." MTD at 20. This argument strains credulity.

First, Plaintiffs allege they took the exact actions on the Covered California website that Markup found to trigger the interception of confidential information by the LinkedIn Insight Tag. Compare Compl. ¶ 45 ("According to the article, "[a]s visitors filled out forms on the website, trackers on the same pages told LinkedIn their answers to questions about whether they were blind, pregnant, or used a high number of prescription medications. The trackers also monitored whether the visitors said they were transgender or possible victims of domestic abuse."); with Compl. ¶ 8 ("Plaintiff Doe filled out forms on the Covered California Website… When filling out forms on the Website, Plaintiff Doe disclosed identifying information, as described more thoroughly herein."). All of the interceptions found by the Markup involved questions necessary to obtain health insurance through Covered California, which is only reason someone would fill out forms on the Website. This is sufficient at the pleadings stage.

Second, "while internet-based communications are generally not 'confidential' for purposes of Section 632, '[c]ommunications made in the context of a patient–medical provider relationship are readily distinguishable from online communications in general.'" *L.B.*, 2025 WL 2899514, at *18 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799).

This case mirrors those in *L.B.* where the Court sustained the § 632 claims, finding:

> [T]he information allegedly shared here may not be as sensitive as the health-related data in *In re Meta Pixel Healthcare Litig.* The data sharing here occurred pre-services outside of a secured patient portal. However, while Plaintiffs may not have been communicating directly with medical care providers, they were still providing personal information in search of medical services. This could at least support a reasonable expectation that this information will be kept confidential.

*Id*., at *18.

The same is equally (if not more) true here. Plaintiffs and Class Members submitted sensitive information for the express purpose of applying for health insurance to receive medical care and reasonably expected those communications to be confidential. Compl. ¶ 3 ("Covered California is California's official health insurance marketplace, established to help residents find and afford health insurance plans. It offers a way to compare and purchase plans from various health insurance companies."), *id.* ¶ 6 ("Consumers reasonably expect that their personal information will remain confidential, particularly when it comes to sensitive data such as medical and insurance information."), *id.* ¶ 47 ("[W]hen an individual indicated they were pregnant, the information was sent to LinkedIn via the Insight Tag."), *id.* ¶ 48 ("[W]hen an individual selected a medical provider, the information was sent to LinkedIn via the Insight Tag."), *id.* ¶ 49 ("In addition to demographic information including gender, the site also shared details with LinkedIn when visitors selected their ethnicity and marital status, and when they told coveredca.com how often they saw doctors for surgery or outpatient treatment."), *id.* ¶ 80 ("Plaintiffs and Class Members expected their communications to Covered California to be confined to Covered California in part, due to the protected nature of the health information at issue. Plaintiffs and Class Members [did not expect] LinkedIn to secretly eavesdrop upon or record this confidential information and their communications.").

## V. PLAINTIFFS SUFFICIENTLY ALLEGE A VIOLATION OF THE ECPA

### A. Defendant Is Liable Under The "Crime-Tort Exception" In The ECPA

Defendant argues "Plaintiffs fail to plead a Federal Wiretap Act claim" because "Covered California consented to sharing data it collects with LinkedIn." This misstates the law.

There can be no violation of ECPA if "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(d). An exception to this exception exists, however, where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id*. Courts have routinely found this "crime-tort" exception applies where plaintiffs "alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles," that this "association of their data with preexisting user profiles violated state law" (*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)), and that the technology companies "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exemption does not apply."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) ("What [defendant's] true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record.").

Plaintiffs have alleged exactly that. Compl. ¶ 50 ("LinkedIn intercepts each piece of medical information via a contemporaneous GET request as each piece of information is entered into the Covered California website. LinkedIn immediately views and processes the information and adds it to advertising data sets."); *id.* ¶ 84 ("LinkedIn utilized Plaintiffs' and Class Members'

sensitive personal and health information for its own purposes, including for targeted advertising.").

Defendants' contention that a third-party pixel operator cannot be liable under the Wiretap Act does not hold up under a review of the caselaw. Courts in this District and beyond have sustained claims against technology companies for the same conduct. *See Brown*, 525 F. Supp. 3d 1049, 1067 ("Plaintiffs have alleged that Google intercepted their communications for the purpose of associating their data with preexisting user profiles. The association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies [the Crime-Tort] exception.") (internal citation omitted); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025); *Selby*, 2025 WL 2950164 at *3; *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (sustaining an ECPA claim against providers of tracking technology when the defendants' argued "the host websites consented to the alleged interception"); *Semien*, 2026 WL 216333, at *9-10 (same); *Krzyzek*, 2026 WL 206855 at *8 (same).

**B. Defendant's Remaining Arguments Do Not Warrant Dismissal**

Defendant argues "Plaintiffs' Federal Wiretap Act claim fails for the independent reason that they fail to plead the elements of this claim and for all of the same reasons that require dismissal of Plaintiffs' Section 631 claim under CIPA." MTD at 22. For the reasons discussed above, this argument fails.

Defendant also argues that the "contents" of Plaintiffs' communications were not intercepted. This is wrong. Each form selection on the Covered California website conveyed specific information from Plaintiffs and Class Members related to their health insurance applications. There is no doubt that affirmative representations of medical conditions and answers to medical intake questionnaires are the "contents" of a communication under CIPA and the ECPA. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (citing *Meta Pixel*, 647 F. Supp. 3d at 795-796) ("Because Plaintiff has sufficiently pleaded that the URLs transmitted to Facebook and Google include a patient's symptoms or the reason for her medical appointment, she sufficiently alleges the contents of a communication."); *In re Google*

*RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (finding under the Electronic Communications Privacy Act that "referrer URL that caused navigation to the current page," "details about the publisher object of the site or app" and "details about the content within the site or app" all constituted "content"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("Here, Plaintiffs allege that the data collected by Defendant and transmitted to third parties includes personal health information. Such information reveals a substantive message about Plaintiffs' health concerns.").

## VI. PLAINTIFFS SUFFICIENTLY ALLEGE INTRUSION UPON SECLUSION

Finally, Defendant argues "Plaintiffs fail to state a claim for invasion of privacy[.]" MTD at 23. This is wrong.

To state a claim for invasion of privacy, Plaintiffs must allege: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiffs have done so.

"It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Plaintiffs properly plead a specific legally protected privacy interest — namely, an interest in: "(1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiffs' and Class Members' knowledge or consent." Compl. ¶ 88. Therefore, Plaintiffs have alleged a specific privacy interest in their medical information.

Further, Defendant has no valid basis for arguing that its invasion of privacy was not highly offensive. Notably, Defendant ignores a host of recent cases that have held that surreptitious data collection meets the "highly offensive" requirement — even when the data at issue was only

browsing data, as opposed to the highly-sensitive health information at issue here. *See, e.g.*, *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (holding the interception of browsing data was highly offensive given that Google "set an expectation that it would not save plaintiffs' activity on apps") (internal quotations omitted); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1079-80 (N.D. Cal. 2021) (finding the data collections to be highly offensive because Google's "representations regarding private browsing mode could have led users to assume that Google would not view their activity when in private browsing mode"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021) (finding Google's actions highly offensive because Google's "representations regarding Chrome's sync function could have led users to assume that Google would not receive the personal information at issue . . . while unsynced"). Given that this case involves the disclosure of sensitive health information, it is nonsensical for Defendant to contend that the wiretapping of such information would not be highly offensive. *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (even negligent disclosure of medical information is "more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *Stasi v. Inmediata Health Group Corp.* 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) (disclosure of medical information "constitutes a serious invasion of privacy"); *L.B.*, 2025 WL 2899514, at *20 ("Given the nature of LinkedIn's alleged conduct and the sensitivity of the information shared here, the Court finds this issue is also inappropriate to resolve at the pleadings stage.").

**CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied. If the Court grants the Motion in any respect, Plaintiffs respectfully request leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: February 13, 2026 **BURSOR & FISHER, P.A.**

By: */s/ Joshua R. Wilner*
Joshua R. Wilner

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jwilner@bursor.com

**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (State Bar No. 236805)
ekim@lcllp.com
Tiffine E. Malamphy (State Bar No. 312239)
tiffine@lcllp.com
117 E Colorado Blvd., Ste 600
Pasadena, CA 91105-3712
Telephone: (213) 723-0707
Facsimile: (858) 313-1850

*Attorneys for Plaintiffs*