KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
LIAM BROWN - #347518
liambrown@keker.com
FLORA D. MORGAN - # 359733
fmorgan@keker.com

633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE and CYNTHIA HAYS individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:25-cv-03737-EJD<br><br>**REPLY IN SUPPORT OF DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>Date: April 16, 2026<br>Time: 9:00 a.m.<br>Dept.: Ctrm 4 - 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>Date Filed: November 14, 2025 |

**TABLE OF CONTENTS**


**Page(s)**

I. ARGUMENT ..... 2

A. Plaintiffs fail to sufficiently plead intent in light of the Ads Agreement and Covered California's status as a government actor ..... 2

B. Plaintiffs cannot plausibly allege lack of consent given the undisputed judicially noticeable facts of how Covered California's website operated ..... 5

C. Plaintiffs fail to state claims under CIPA § 631 or CIPA § 632. ..... 7

1. CIPA § 631 ..... 7

2. CIPA § 632 ..... 10

D. Plaintiffs' Federal Wiretap Act claim fails because the one-party consent rule applies, and they otherwise fail to plead the elements of the claim. ..... 11

1. The crime-tort exception to one-party consent does not apply. ..... 11

2. Plaintiffs fail to plead that LinkedIn intercepted any "contents." ..... 13

E. Plaintiffs fail to state a claim for invasion of privacy under the California Constitution. ..... 13

II. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Ambry Genetics Data Litigation*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ....................15

*B.N. v. Oregon Reproductive Medicine, LLC*,
2025 WL 3165965 (D. Or. Nov. 12, 2025)....................4

*Borg-Warner Corp. v. Comm'r of Internal Revenue*,
660 F.2d 324 (7th Cir. 1981) ....................3

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................15

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................9

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................11

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................9, 10

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....................11, 12, 13

*Doe v. Regents*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ....................15

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan 6, 2026)....................12

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797, 816 (N.D. Cal. 2020) ....................4, 5

*People ex rel. Green v. Grewal*,
61 Cal. 4th 544 (2015) ....................10

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022)....................9, 14

*Hernandez v. Hillsides, Inc.*,
211 P.3d 1063 (Cal. 2009) ....................14

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ........ 7

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ *passim*

*L.B. v. LinkedIn Corp.*,
No. 5:24-cv-06832-EJD (N.D. Cal. Nov. 22, 2024) ........ 9

*Liparota v. United States*,
471 U.S. 419 (1985) ........ 12

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ........ 7

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ........ 12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 11

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 11

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 12

*Rodriguez v. Google, LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........ 8, 15

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ........ 11

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 12

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 4

*Stasi v. Inmedidata Health Group Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ........ 15

*United States v. Chemical Foundation*,
272 U.S. 1 (1926) ........ 3

**Federal Statute**

Federal Wiretap Act ........ *passim*

**Rules**

Fed. R. Civ. Proc. Rule 8 ....................................................................................................2, 4

Fed. R. Civ. Proc. Rule 9(b)...............................................................................................3, 4

Rather than cure the defects identified in LinkedIn's motion to dismiss, Plaintiffs' opposition underscores them. Most critically, Plaintiffs fail to address two features of this case that set it apart from the complaints this Court considered in *L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025), and make Plaintiffs' claims here even weaker.

First, the website at issue—Covered California—is run by the State of California, not a private company. That distinction matters. In *L.B.*, this Court found that plaintiffs' intent allegations—directed at private healthcare companies—created only a "relatively weak" inference to satisfy the intent requirement. Here, that inference is non-existent. Under the presumption of regularity, LinkedIn was entitled to expect that the government would obey its own state laws and honor the LinkedIn Ads Agreement, which expressly forbids advertisers from using the Insight Tag to transmit health information to LinkedIn. Plaintiffs' complaint is devoid of any allegations to rebut that presumption, and their opposition ***ignores*** it altogether.

The second issue is equally damning. Plaintiffs do not dispute that the only questions on the Covered California website that they claim relate to health information are ***optional***. And Plaintiffs do not allege that they answered any of these optional questions. All they allege is that they "filled out forms." Compl. ¶ 8. That is in stark contrast with *L.B.*, where plaintiffs alleged that they answered specific, mandatory questions about weight loss methods, medication goals, mental health conditions, and gender on private websites. Plaintiffs' failure to allege that they answered any questions calling for health information is not a minor pleading issue; it is a failure to state a claim. Each of these issues is sufficient to sink Plaintiffs' claims.

Plaintiffs' opposition also confirms the other case-dispositive defects in their complaint.

***Federal Wiretap Act.*** The Wiretap Act is a one-party consent statute, and the materials Plaintiffs cite in their complaint establish that Covered California placed the Insight Tag on its own website, thereby consenting to the Tag's operation. This is dispositive. But Plaintiffs inexplicably ask the Court to apply an exception to this exception on the unsupported claim that Plaintiffs have been subject to criminal or tortious conduct here. But this is not a case where Plaintiffs have alleged that LinkedIn engaged in egregious conduct or represented that it would not collect user data off its Services and then did so anyway. By contrast, LinkedIn disclosed to

users like Plaintiffs what information the Insight Tag collects, told advertisers not to place it on pages gathering health data, and Covered California, a government agency, agreed to those terms to install the Tag. Plaintiffs cannot allege criminal or tortious conduct because there was none.

Even looking past the consent defense, Plaintiffs have not alleged the elements of a Wiretap Act claim. They have not plausibly alleged intent: the Wiretap Act is a criminal statute demanding purposeful and deliberate action—not negligence or constructive knowledge, and not the recycled industry-awareness allegations (about other companies, in other contexts) on which they rely. They have not plausibly alleged interception with bare assertions that the Tag operated "contemporaneously" and "concurrently." These are formulaic recitations that do not survive Rule 8, and are no more specific than the allegations this Court found insufficient in *L.B.* And Plaintiffs have not plausibly alleged that any protected "contents" were captured, because they have pleaded no facts showing they submitted any health information through Covered California's website. The claim fails at every turn.

***CIPA Sections 631 and 632.*** For largely the same reasons, Plaintiffs' CIPA claims fare no better. Plaintiffs fail to plead any allegations, much less plausible ones, indicating LinkedIn intended to intercept their communications while they were "in transit" or establishing that they did not consent to LinkedIn's collection of their data.

***California constitutional invasion of privacy***. Plaintiffs' invasion of privacy claim likewise fails because they cannot plausibly allege a reasonable expectation of privacy or that LinkedIn's conduct was highly offensive. Plaintiffs voluntarily accessed a government-operated website; and, if they submitted any health-related information on that website—which they never allege—they did so voluntarily. LinkedIn and Covered California disclosed their use of advertising technologies that permit user information to be shared with third parties. And Plaintiffs provide no well-pleaded allegations that LinkedIn targeted Plaintiffs' health data, sought to use that information for profit, or served them with a single targeted advertisement.

Accordingly, Plaintiffs' complaint should be dismissed in its entirety with prejudice.

# I. ARGUMENT

## A. Plaintiffs fail to sufficiently plead intent in light of the Ads Agreement and

**Covered California's status as a government actor.**

Plaintiffs do not dispute that the LinkedIn Ads Agreement—for which they do not oppose judicial notice or incorporation by reference—expressly conditions Covered California's installation of the Insight Tag on its agreement not to transfer to LinkedIn any "Sensitive Data," including health data. *See* MTD at 11–13. Nor do they dispute that, in *L.B.*, the Court found that this agreement weakened any inference of intent. *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *11–13. In its motion, LinkedIn presented three additional, independent reasons why Plaintiffs' allegations of intent are significantly weaker than those that barely crossed the pleading threshold in *L.B.* (and the other cases cited by Plaintiffs). Two of those arguments remain unaddressed, and Plaintiffs' response to the third fails to convince.

***First***, and most importantly, unlike *L.B.*, this case involves a ***government actor***, which, under the presumption of regularity, LinkedIn was entitled to presume would follow its own laws and the Ads Agreement. *See United States v. Chemical Foundation*, 272 U.S. 1, 14–15 (1926); *see also Borg-Warner Corp. v. Comm'r of Internal Revenue*, 660 F.2d 324, 330 n.5 (7th Cir. 1981) ("In the interests of fairness, . . . the presumption of regularity should operate to the benefit of the taxpayer as well as the government."). The presumption of regularity reverses an already weak inference of intent because LinkedIn could lawfully presume that Covered California would act in accordance with the law in using its Insight Tag. Plaintiffs ***completely ignore*** this argument. They provide no explanation for how their deficient allegations could support a finding of intent given this distinction. This alone is sufficient to warrant dismissal.

***Second***, unlike in *L.B.*, Plaintiffs' allegations, which incorporate those advanced in *The Markup* article, explicitly show that Covered California, not LinkedIn, placed the Tag and controlled what data it transmitted to LinkedIn. *See* Compl. ¶ 44. Plaintiffs' opposition does not address this argument either.

***Third***, unlike in previous cases, Plaintiffs' allegations are subject to Rule 9(b)'s heightened pleading requirements, because they affirmatively allege that "LinkedIn engaged in conduct that expressly contravened its own terms and representations." Compl. ¶ 5. Plaintiffs thus expressly (but conclusorily) accuse LinkedIn of misrepresenting its intent not to receive any

health data from advertisers. This amounts to an allegation that the statements in the Ads Agreement are fraudulent misrepresentations, pushing this complaint over the line triggering "the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)," that was previously drawn by the Court in *L.B.* 2025 WL 2899514, at *13 n.10. Plaintiffs' allegations of intent do not satisfy Rule 8, much less Rule 9(b). The allegations Plaintiffs rely on merely state legal conclusions about intent (*see* Compl. ¶¶ 39–40, 103, 111) or make allegations involving other companies, not LinkedIn (*see id.* ¶¶ 41–43).[1]

Plaintiffs also offer two unrelated arguments, both of which fail. Plaintiffs argue that LinkedIn must have acted intentionally because their attorneys filed the first of the *L.B.* cases six months before Covered California removed the Insight Tag from its website. Opp. at 4. But Plaintiffs' counsel has filed many pixel complaints, and many of those have been dismissed at the pleading stage, including some of the recent *L.B.* cases involving LinkedIn's Insight Tag. *See L.B.* 2025 WL 2899514, at *1; *see also e.g., Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 946 (N.D. Cal. 2024) (granted with leave to amend); *B.N. v. Oregon Reproductive Medicine, LLC*, 2025 WL 3165965, at *1 (D. Or. Nov. 12, 2025) (granted with leave to amend). The *L.B.* cases involved different third-parties installing the Insight Tag on different websites that have no connection to this case—and none of those third-parties were government actors. Unsubstantiated allegations about use of the Insight Tag by unrelated third-parties does nothing to support an inference of intent in this case. Plaintiffs rely on *In re Google Assistant Priv. Litig.* for their novel argument, but that case did not involve inferring intent from the filing of a complaint in a

---

[1] Plaintiffs' response that Rule 9(b) does not apply simply because they omitted the word "fraud" from their complaint is unavailing. Opp. at 5, n.1. While the Court determined it did not need to reach that issue based on the allegations in *L.B.*, Plaintiffs here have taken a step further by accusing LinkedIn of "expressly contraven[ing] its own terms and representations," triggering Rule 9(b). Compl. ¶ 5. Plaintiffs also complain that LinkedIn has not identified which aspects of the alleged fraud it lacks sufficient notice of. Opp. at 5, n.1. But Plaintiffs do not come close to pleading any part of their claims with the necessary particularity.

different matter; rather, it involved specific allegations that the defendant was aware of the specific interceptions and persisted in using the intercepted data "even after [it became] aware of their provenance." 457 F. Supp. 3d 797, 816 (N.D. Cal. 2020). Plaintiffs allege no comparable facts here. In any event, even if the filing of the first *L.B.* case in August 2024 was somehow relevant for intent, the only allegation in the complaint specifying when Plaintiffs submitted information to Covered California states that Plaintiff Doe "filled out forms" on the website in June 2024—*two months earlier*. Compl. ¶¶ 8, 10.

Plaintiffs' second unrelated argument is that *The Markup* article suggests "Covered California was working with LinkedIn on advertising campaigns." Opp. at 4. But the fact that Covered California was advertising with LinkedIn does not support an inference that LinkedIn must have known that Covered California, a government entity, had improperly installed the Insight Tag on its website in such a way as to contravene the Ads Agreement.

Ultimately, under either Rule 8 or Rule 9(b), Plaintiffs have failed to plausibly allege that LinkedIn had the requisite intent to violate the Federal Wiretap Act (a criminal statute), CIPA, or to intrude upon their privacy under the California Constitution. Their claims should be dismissed.

**B. Plaintiffs cannot plausibly allege lack of consent given the undisputed judicially noticeable facts of how Covered California's website operated.**

Plaintiffs fail to grapple with the reasons provided by LinkedIn for why her allegations here are weaker than those that the Court found sufficient to plead lack of consent in *L.B.* 2025 WL 2899514, at *6–7. Most importantly, Plaintiffs do not dispute any of the judicially noticeable facts presented by LinkedIn regarding how the website at issue here operates.[2] Critically:

- The only questions Plaintiffs identify on the Covered California website as having anything to do with health information are ***completely optional***. *See e.g.*, Morgan Decl. Exs. N5–N6 (optional checkbox for "Pregnant?" and "Blind or Disabled?"); N7 (optional

[2] Plaintiffs do not contest LinkedIn's request for judicial notice, which sets forth why the Court can consider the relevant webpages under both the incorporation by reference and judicial notice doctrines. *See* LinkedIn's Request for Judicial Notice (Dkt. 50).

questions about prescription drug usage). A user can fill out forms referenced in the complaint without ever answering a health-related question.

- And a user is ***not even required to fill out those forms*** in the first place. The Covered California website contains numerous other forms, which Plaintiffs do not allege contain any sensitive questions. *See* Morgan Decl. Exs. N1–N4, N8–N15.

In short, merely "fill[ing] out forms" on the Covered California website—***which is the one and only thing Plaintiffs allege they did*** (Compl. ¶¶ 8, 10)—does not equate to the provision of any sensitive information whatsoever. Since the complaint contains no allegations about what questions on what forms Plaintiffs responded to—much less allegations that they responded to questions asking for any sensitive health information, or that they or anyone else ever was required to do so—the only plausible inference is that Plaintiffs submitted some generic website interaction data.[3] And Plaintiffs do not dispute that they consented to the collection of such non-sensitive data, as disclosed by both Covered California and LinkedIn. *See* MTD at 14–15; *see also* Morgan Decl. Exs. A–C, N, O–P.

The paucity of Plaintiffs' allegations—merely that they "filled out forms" (Compl. ¶ 8)—is especially stark in comparison to the allegations that the Court found sufficient on a motion to dismiss in *L.B.*: in those cases, the plaintiffs identified numerous specific questions that they responded to in required forms. *See L.B.*, 2025 WL 2899514, at *6–7. For example, for one website, the plaintiff alleged:

> Customers ***must*** complete a survey on the website to determine if they qualify for the medication. The survey asks users to identify their gender at birth, height, weight, and how many pounds they would like to lose. The survey also asks users to select which goals they are looking to accomplish: "lose weight," "improve general health," "look better," "improve confidence," "increase energy," and/or "better sex." The survey then asks users to select what weight loss methods they have used in the past: "exercise," "dieting," "weight loss supplements," "intermittent fasting," and/or "medical weight loss program."

---

[3] The complaint also does not allege that Plaintiff Hays' use of the Covered California website even occurred during the period when the Insight Tag was installed. *See* Compl. ¶ 10; MTD at 15.

*Id.* at *6 (emphasis added) (citations omitted). For another, plaintiff alleged, "To get connected with care, patients ***must*** provide information regarding their location, concerns—specifically asking users to choose 'ADD/ADHD,' 'anger management,' 'anxiety,' 'bipolar disorder,' etc.—and insurance carrier." *Id.* at *7 (emphasis added). Here, Plaintiffs allege nothing of the sort.

At bottom, given that Plaintiffs do not allege anything about what information they submitted or dispute that all the purportedly sensitive questions are optional, Plaintiffs have failed to allege any facts to support the claim that their sensitive health information was collected. At most, Plaintiffs allege the collection of generic website interaction data, and it is undisputed that they consented to the collection of such data.

### C. Plaintiffs fail to state claims under CIPA § 631 or CIPA § 632.[4]

#### 1. CIPA § 631

***Read/Attempt to Read.*** Plaintiffs insist that their allegations "distinguish" this case from *L.B.*, but they identify no well-pleaded facts that plausibly show LinkedIn "read" or "attempted to read" any of their information. Rather than explain "where in th[e] process LinkedIn would read, attempt to read, or learn the contents of [their] communications" (*L.B.*, 2025 WL 2899514 at *16), Plaintiffs selectively quote from LinkedIn's general marketing materials about its advertising tools and how they work. Opp. at 6. But generalized statements about LinkedIn's marketing services do not make it plausible that LinkedIn "read" any information from Plaintiffs specifically. *See Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *2–3 (C.D. Cal. Aug. 4, 2025) (dismissing CIPA claims where plaintiffs' complaint included only "broad, generalized allegations about [d]efendant's full product line, while offering scant detail about [p]laintiffs' own experiences with any of them"). Indeed, merely "quoting . . . lines from the [defendant's] polic[ies] and then making broad assertions about use is not enough to state a claim under the second clause of § 631(a)." *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, *2 (N.D. Cal. May 8, 2024); *see* MTD at 17. Nor does Plaintiffs' bare assertion that "LinkedIn intercepts each piece of medical information via a contemporaneous GET request as each piece of information is entered

[4] Plaintiffs concede that they are not bringing a claim under clause one of § 631. Opp. at 6 n.2.

in the Covered California website" make it plausible that LinkedIn read *Plaintiffs'* medical information. Opp. at 6. Plaintiffs do not allege any well-pleaded facts about any information they submitted to Covered California, much less facts suggesting that LinkedIn affirmatively *read* or *learned* the meaning of any such information. Plaintiffs do not allege, for example, that they received targeted advertising from LinkedIn based on information they submitted to the Covered California website. These fundamental pleading defects are fatal to Plaintiffs' claim.

***In Transit.*** Plaintiffs fail to plead that LinkedIn attempted to read any of their communications while "in transit." *See* MTD at 18–20 (citing, *inter alia*, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024)). To start, Plaintiffs fail to respond to LinkedIn's argument that their interception allegations are implausible considering the claim that their information was "disclosed" to LinkedIn. Opp. at 5; MTD at 19; *L.B.*, 2025 WL 2899514, at *16 ("Plaintiffs must allege that LinkedIn read their communications during their transmission, as opposed to once the communications were placed in electronic storage."). Even setting that tacit concession aside, Plaintiffs still cannot identify any well-pleaded facts explaining when or how the purported "interception" occurred. Plaintiffs tack on conclusory terms like "contemporaneously" and "concurrent" to generic allegations regarding the Insight Tag's operation, but this Court and others have rejected such allegations as insufficient. Opp. at 7; Compl. ¶ 30; *see L.B.*, 2025 WL 2899514, at *16 ("Plaintiffs' allegations . . . are conclusory recitations of an element of the Clause-Two claim, so they are not entitled to a presumption of truth."); *see also Rodriguez v. Google, LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (holding that allegations of interception occurring "simultaneously" were insufficient to state a § 631 claim).

Nor does Plaintiffs' inclusion of screenshots from *The Markup* cure their pleading failures because, as discussed above, *supra* Sections II.A–B, they fail to allege any well-pleaded facts that tie their own interactions with the Covered California website to these screenshots. Opp. at 7; Compl. ¶¶ 47–49. Plaintiffs do not allege what information they provided to Covered California, through which forms, or on which webpages, much less how LinkedIn read any of their communications while they were in transit. Such skeletal allegations, coupled with generic

assertions about the Insight Tag, are insufficient. *See L.B.*, 2025 WL 2899514, at *16 (finding implausible allegations of "in transit" interception as "another basis for dismissing [p]laintiffs' [c]lause [t]wo claims"); *Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (dismissing CIPA claim where plaintiffs' bare allegation that defendant "collects 'real-time data'" did not plausibly allege data collection "in transit"); *Cody*, 718 F. Supp. 3d at 1001 (dismissing CIPA claim where plaintiff alleged that "the third-party software is 'plugged into' Ring's website" and "allows chats to be routed 'in real time ... as they occur'").

Plaintiffs resort to asserting that they should be held to a lower bar than the standard this Court applied in *L.B.* Opp. at 7–8 (citing cases). But they provide no reason to deviate from that standard: while "[p]laintiffs need not prove their theory of interception to survive dismissal, [] they must provide fair notice to [LinkedIn] of when they believe [LinkedIn] intercepts their communications" by alleging "specific facts about when . . . and how the interception took place[.]" 2025 WL 2899514, at *16 (quoting *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017), and *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024)). Repeating synonyms for "interception" and relying on facts untethered to Plaintiffs does not meet this standard.[5] Indeed, Plaintiffs' arguments mirror the ones this Court rejected as insufficient in *L.B.* 2025 WL 2899514, at *16; *see* Plaintiff's Opp. to Mot. to Dismiss at 11, *L.B. v. LinkedIn Corp.*, No. 5:24-cv-06832-EJD (N.D. Cal. Nov. 22, 2024) (arguing that LinkedIn "intercepted Plaintiff's . . . communications at the time that Plaintiff . . . input said communications into the Website, as the function of the LinkedIn Insight Tag duplicated the communications with the Website and sent the same to LinkedIn"). In any case, because CIPA is a criminal statute that should be construed narrowly, courts have declined to interpret Section

---

[5] Neither Plaintiffs' case cites about CIPA's breadth in the abstract (*see* Opp. at 8), nor the fact that *Doe v. Eating Recovery* is a summary judgment order dislodge § 631's requirement that there must be an attempt to read the contents of a communication while in transit. Plaintiffs also offer no plausible allegations of their communications being "redirected," unlike in the *Doe* motion to dismiss order. 2024 WL 2852210, at *2 (N.D. Cal. June 4, 2024).

631(a)'s "in-transit" requirement so broadly as to cover the conduct at issue here. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025) ("[U]sing a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping."); *see also People ex rel. Green v. Grewal*, 61 Cal. 4th 544, 565 (2015) (the rule of lenity applies with equal force to civil actions involving a criminal statute).

***Use.*** Plaintiffs have offered no plausible allegations that LinkedIn "use[d]" any of their communications for targeted advertising. Opp. at 9. For the same reasons Plaintiffs have failed to state a claim under clause two, Plaintiffs have also failed to state a "use" claim under clause three.

**2. CIPA § 632**

Plaintiffs acknowledge that internet-based communications are presumptively not confidential. Opp. at 9. As explained above, *supra* Sections II.A–B, and in LinkedIn's motion to dismiss, this case is distinct from *L.B.* because there are no plausible allegations about what information Plaintiffs submitted to Covered California and whether any of their submissions included sensitive health information. Compl. ¶¶ 8, 10. Indeed, the only questions Plaintiffs identify as soliciting health information are undisputedly ***optional*** (*see* Morgan Decl. Exs. N1–N15) and Plaintiffs have alleged no facts that they actually answered those questions.

Plaintiffs attempt to invoke the exception for communications made within a patient-medical provider relationship to save their § 632 claim. They contend that they "took the exact actions on the Covered California website that the Markup found to trigger the interception of confidential information by the LinkedIn Insight Tag" (Opp. at 9), and that "[a]ll of the interceptions found by the Markup involve questions necessary to obtain health insurance through Covered California[.]" *Id*. Not only are these allegations absent in their complaint (*see* Compl. ¶¶ 8, 10) but they are implausible in light of the documents incorporated by reference into the complaint, which show that such questions ***are not*** "necessary" to shop or apply for health insurance on the Covered California website. *See* Morgan Decl. Exs. N1–N15. Here, the only plausible inference is that any information the Tag allegedly collected was at most general browsing data, which Covered California and LinkedIn disclosed may be collected, and which falls squarely within the presumption that internet-based communications are not confidential.

### D. Plaintiffs' Federal Wiretap Act claim fails because the one-party consent rule applies, and they otherwise fail to plead the elements of the claim.

Plaintiffs' Federal Wiretap Act claim fails because (1) they cannot overcome the one-party consent rule, and (2) they fail to allege criminal intent and interception in transit, as discussed *supra* Sections II.A, C, or that LinkedIn intercepted any "contents" of any communications.

#### 1. The crime-tort exception to one-party consent does not apply.

Plaintiffs agree that the one-party consent rule is a complete defense to liability under the Federal Wiretap Act (*see* 18 U.S.C. § 2511(2)(d)), effectively conceding that Covered California consented to sharing their information. Opp. at 11–12; *see Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (one-party consent rule barred ECPA claim where defendant, "as the creator and operator of its website, consented to the use of data collection tools it installed on its website"); *cf. L.B.*, 2025 WL 2899514, at *11 (dismissing ECPA claim due to plaintiff's one-party consent).

Plaintiffs instead argue that the one-party consent rule does not bar their Federal Wiretap claim because the crime-tort exception applies. It does not. The exception prohibits a party from recording communications "for the purpose of facilitating some ***further*** impropriety, ***such as blackmail***." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2022) (emphasis added). But Plaintiffs do not allege that LinkedIn intended to commit any wrongful act with their communications, much less to commit any specific "criminal or tortious" act that is "separate and independent from the act of recording." *Id.* at 1136. Indeed, their own cited cases make clear that even allegations that a defendant intercepted data "to make money, not to injure plaintiffs tortiously," are *insufficient* to meet the crime-tort exception. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *see also Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1064, 1077 n.2 (N.D. Cal. 2023) ("liability does not lie where a defendant's primary motivator was to make money"). At the very most, Plaintiffs' bare allegation that "LinkedIn immediately views [their information] and adds it to advertising data sets" (Compl. ¶ 50), cannot plausibly suggest any purpose beyond ordinary "market research and consumer

analysis[.]" *See Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) ("The collection of information itself was not for the purpose of committing a crime or tort"; "the apparent purpose was to use the information collected for market research and consumer analysis.").[6] The exception to the exception does not apply here, and to the extent there is any ambiguity about the scope of the crime-tort exception, the rule of lenity requires that it be construed in LinkedIn's favor. *See Liparota v. United States*, 471 U.S. 419, 427 (1985) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.").

Indeed, none of Plaintiffs' cited cases apply here. For example, in *Brown v. Google*, the court found that the crime-tort exception was satisfied where plaintiffs plausibly alleged "that Google intercepted their communications for the purpose of associating their data with preexisting user profiles." 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). Here, Plaintiffs fail to allege that LinkedIn intercepted or used any of their communications, much less that LinkedIn commingled that data with preexisting user profiles. *Id.* Nor have Plaintiffs plausibly alleged that LinkedIn used their information to "sell ads to other third-party advertisers" as alleged in *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024), or that LinkedIn used their information "for an unauthorized purpose, which resulted in tortious acts[,]" as alleged in *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025). Plaintiffs' allegations are also distinguishable from *Doe v. Meta Platforms*, where plaintiff alleged that while Meta claimed to want to prevent third parties from sending sensitive data through its pixel, it in

---

[6] Even were a monetary motive sufficient (it is not), Plaintiffs have alleged no facts that LinkedIn sold their information or compiled data about them across third-party websites for profit. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) (allegations that "LiveRamp unlawfully intercepted, packaged, and sold personal information without consent at scale" for profit); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan 6, 2026) (allegations that Experian used intercepted content for profiles about users visiting *other* websites and "provided that information in real-time to permit active bidding on advertising space on those websites during the user's visits").

fact directed health care providers to upload patient lists and encouraged "health care marketers" to use Meta's pixel to collect data to target patients and "disrupt health and how we market to patients"; quoted Meta employees who explained how Meta can assist in the "patient journey"; and provided a litany of examples of Meta developing and distributing targeted advertising using health-related data. Class Action Compl. at 12–13, 28–31, 35, No. 3:22-cv-03580-WHO (N.D. Cal. Feb. 21, 2023), Dkt. 185; 690 F. Supp. 3d 1064.

The Court should dismiss the Federal Wiretap Act claim under the one-party consent rule.

**2. Plaintiffs fail to plead that LinkedIn intercepted any "contents."**

In addition to failing to plead either intent or interception in transit, *see supra* Sections II.A, C, Plaintiffs have alleged no well-pleaded facts that LinkedIn intercepted the "contents" of any of their communications with Covered California. MTD at 22–23. Plaintiffs' sole response is to assert that "affirmative representations of medical conditions and answers to medical intake questionnaires" are "contents" of communications. Opp. at 12. But even assuming that is the case, Plaintiffs miss the fundamental problem here, which is that they have not plausibly alleged that they submitted any such information to Covered California. *See supra* Section II.B. Indeed, the documents incorporated by reference establish that answering questions about health information is optional, further undermining the plausibility of Plaintiffs' allegations. *See* Morgan Decl. Exs. N1–N15. Plaintiffs have thus failed to plausibly plead that LinkedIn intercepted the "contents" of any of their communications, and their Federal Wiretap Act claim must be dismissed.

**E. Plaintiffs fail to state a claim for invasion of privacy under the California Constitution.**

Plaintiffs' efforts to save their claim for invasion of privacy fail for two reasons. ***First***, Plaintiffs fail to allege any ***facts*** sufficient to invoke a reasonable expectation of privacy in the information they actually submitted to Covered California. Indeed, Plaintiffs wholly fail to respond to LinkedIn's arguments regarding their failure to plausibly allege a reasonable expectation of privacy. *Compare* MTD at 23–24 *with* Opp. at 13. Plaintiffs respond merely that they have an alleged privacy interest in medical information, but whether or not they have a privacy interest in certain information is a separate inquiry from whether their stated expectation

of privacy is reasonable under the circumstances. *See Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1974 (Cal. 2009) (a legally protected privacy interest and reasonable expectation of privacy are separate elements of a constitutional-privacy claim). But even setting Plaintiffs' failure to respond aside, they have failed to plausibly plead that they submitted any health information through the Covered California website. Even assuming *arguendo* that they did, Plaintiffs fail to address LinkedIn's argument that their stated expectation of privacy is implausible because they submitted this information voluntarily in response to optional questions. *See* MTD at 23–24, *see e.g.*, Morgan Decl. Ex. N5. Furthermore, Plaintiffs do not dispute that they were required to agree to Covered California's Privacy Policy before submitting any information on the website, and they expressly acknowledge that, as LinkedIn members, they agreed to LinkedIn's Privacy Policy and related terms. Compl. ¶ 36, n.27. Covered California's Privacy Policy explicitly states that it automatically tracks numerous categories of information to "help[] [Covered California] analyze [its] website to continually improve the value of the materials available, including, but not limited to, [its] marketing materials." *See* Morgan Decl. Ex. P; MTD at 9. Likewise, as the Court has previously held, "LinkedIn's disclosures provide sufficient notice of its general collection practices," including by using "[d]ata collected by advertising technologies on and off [LinkedIn's] Services." *L.B.*, 2025 WL 2899514, at *5; *see* MTD at 5–7. In light of these clear disclosures, Plaintiffs' agreement to the policies, and Plaintiffs' failure to respond to LinkedIn's arguments, they have not plausibly alleged a reasonable expectation of privacy.

***Second***, Plaintiffs have not alleged a highly offensive intrusion upon their privacy. The alleged conduct involves the voluntary installation of the Insight Tag—a commonplace internet tool that collects data in ways LinkedIn expressly discloses to users like Plaintiffs—by a government entity LinkedIn was entitled to presume would follow its own Constitution, state laws, and the LinkedIn Ads Agreement. MTD at 12–13, 24–25. Plaintiffs offer no response to LinkedIn's arguments that the alleged conduct falls well short of an egregious breach of social norms. MTD at 24–25; *see also Hammerling*, 2022 WL 17365255, at *9 (defendant's collection of "granular information" from a plaintiff's interactions and searches within third-party apps on her Android smartphone amounted to "data collection of 'routine commercial behavior,' not

considered a highly offensive intrusion of privacy in this district").

Plaintiffs rely on *L.B.*, but they fail to allege any well-pleaded facts showing that LinkedIn collected any health information from them. Comp. ¶¶ 8, 10. That makes this case different from *L.B.*, 2025 WL 2899514, at *18–20, where this Court found minimally sufficient allegations that third-party websites supplied LinkedIn with "medically-related data" submitted by plaintiffs, or *Doe v. Regents*, 672 F. Supp. 3d 813, 816 (N.D. Cal. 2023), where plaintiffs plausibly alleged that the defendant intercepted their personal medical information. Rather, this case is more like *Smith v. Facebook, Inc.*, where the Ninth Circuit affirmed the dismissal of constitutional-privacy claims alleging the collection of "sensitive" health-related data because the "data show[ed] only that [p]laintiffs searched and viewed publicly available health information" (745 F. App'x 8, at *9 (9th Cir. 2018)), like URLs "containing information about treatment options for melanoma, information about a specific doctor, [and] search results related to the phrase 'intestine transplant.'" 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8.[7] The facts alleged here are a far cry from cases like *Rodriguez*, *Brown*, and *Calhoun* which involved plausible allegations that the defendants surreptitiously tracked user information in a way they specifically represented to users they would not. *Rodriguez*, 2021 WL 2026726, at *8; *Brown*, 525 F. Supp. 3d at 1079–80 (N.D. Cal. 2021); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021). Plaintiffs do not plausibly allege any sort of analogous facts here, and nor could they, as LinkedIn's disclosures make clear that it uses technology like the Insight Tag to collect data "on and off [LinkedIn's] Services." *L.B.* 2025 WL 2899514, at *5.

Plaintiffs' claim for invasion of privacy should be dismissed.

## II. CONCLUSION

LinkedIn respectfully requests that the Court dismiss this entire action with prejudice.

---

[7] *In re Ambry Genetics Data Litigation*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021); and *Stasi v. Inmedidata Health Group Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) are inapposite because they are data breach cases resulting in the disclosure of medical information.

Dated: March 13, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Christina Lee*

BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
SPENCER MCMANUS
LIAM BROWN
FLORA D. MORGAN

Attorneys for Defendant LINKEDIN CORPORATION