UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JANE DOE, et al.,

Plaintiffs,

v.

LINKEDIN CORPORATION,

Defendants.

Case No.  5:25-cv-03737-EJD

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 49

KIMBERLY JOHNSON,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendants.

Case No.  5:25-cv-08100-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 29

Plaintiffs in two related cases, *Doe v. LinkedIn Corp.*, Case No. 25-cv-03737 ("*Doe*"), and *Johnson v. LinkedIn Corp.*, Case No. 25-cv-08100 ("*Johnson*"), bring putative class actions against Defendant LinkedIn Corporation ("LinkedIn") concerning alleged breaches of privacy caused by the placement of LinkedIn's "Insight Tag" software on Covered California in *Doe* and Nevada Health Link in *Johnson*. *See Doe* Compl., ECF No. 46; *Johnson* Compl., ECF No. 1. [1] LinkedIn filed a motion to dismiss in each case. Mot. in *Doe*, ECF No. 49; Opp'n in *Doe*, ECF No. 53; Reply in *Doe*, ECF No. 54; Mot. in *Johnson*, ECF No. 29; Opp'n in *Johnson*, ECF No. 32;

_____

[1] The ECF Nos. cited throughout this Order with *Johnson* briefing are from Case No. 25-cv-08100, and the ECF Nos. cited with *Doe* briefing are from Case No. 25-cv-03737.

Reply in *Johnson*, ECF No. 34. Given the overlapping facts, claims, counsel, and arguments, the Court finds it most efficient to resolve both motions in one Order.

After carefully reviewing the relevant documents, the Court finds these motions suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court **GRANTS** the motion to dismiss in *Doe* with leave to amend and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss in *Johnson*.

## I.    BACKGROUND

LinkedIn is an online professional network that also operates in the marketing and advertising space with its Marketing Solutions services. *See Doe* Compl. ¶ 20; *Johnson* Compl. ¶¶ 1–6.[2] Advertisers using LinkedIn's services can target particular audiences based on desired demographics. *Doe* Compl. ¶ 21; *Johnson* Compl. ¶ 4. To support this capability, LinkedIn allegedly collects users' personal information and communications. *Id.* LinkedIn uses that data to make inferences about users' demographics, intent, behavior, engagement, interests, and buying decisions, all of which fuel a suite of services within LinkedIn's Marketing Solutions. *Doe* Compl. ¶ 22. As part of this business model, LinkedIn offers the Insight Tag, a piece of JavaScript-based code often referred to as a "tracking pixel" that advertisers can install on their

[2] Pursuant to Federal Rule of Evidence 201, the Court **GRANTS** LinkedIn's unopposed request in *Doe* to take judicial notice of Exhibits A–Q. Req. for J. Notice in *Doe*, ECF No. 50. These exhibits include LinkedIn's Privacy Policy, Ads Agreement, Ad Policies, User Agreement, Cookie Policy, and Cookie Table; and Covered California's registration process, Privacy Policy, and Terms of Use. *Id.* The Court finds these documents are either incorporated or relied upon in the complaint, or capable of being accurately and readily determined from sources whose accuracy cannot be questioned. The Court also **GRANTS** LinkedIn's opposed request in *Johnson* to take judicial notice of Exhibits A–L. Req. for J. Notice in *Johnson*, ECF No. 30. These exhibits also include LinkedIn's policies and agreements, as well as Nevada Health Link's registration process and Privacy Policy. *Id.* The Court finds these documents are similarly either incorporated or relied upon in the complaint, or capable of being accurately and readily determined from sources whose accuracy cannot be questioned. In response to Johnson's objections, however, the Court will not accept as true the facts contained therein or allow the exhibits to convert this motion to dismiss into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.").

Case Nos.: 5:25-cv-03737-EJD, 5:25-cv-08100-EJD
ORDER REGARDING MOTIONS TO DISMISS
2

United States District Court
Northern District of California

websites. *Doe* Compl. ¶ 27; *Johnson* Compl. ¶ 4. When the advertiser installs the Insight Tag and a LinkedIn account holder visits the advertiser's website, the visitor's internet browser will send certain information about the visitor's actions on the website to LinkedIn. *Doe* Compl. ¶¶ 20–41; *Johnson* Compl. ¶¶ 22–38. LinkedIn then uses that data to identify the visitor as a particular LinkedIn account holder and provide insights to the advertiser about its audience. *Id.*

Plaintiffs Jane Doe ("Doe") and Cynthia Hays ("Hays") in *Doe*, and Plaintiff Kimberly Johnson ("Johnson") in *Johnson* (collectively, "Plaintiffs"), are individuals who allegedly submitted private medical information to state-sponsored online health insurance marketplaces, Covered California and Nevada Health Link. *Doe* Compl. ¶¶ 7–10; *Johnson* Compl. ¶ 12. Plaintiffs allege that, unbeknownst to them, the Insight Tag was installed on Covered California and Nevada Health Link's websites and transmitted their medical data to LinkedIn without their consent. *See id.* Doe and Hays bring a consolidated class action alleging the unauthorized transmission of their data violates the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632; violates the Electronic Communications Privacy Act ("ECPA" or "Federal Wiretap Act"), 18 U.S.C. § 2511(1), *et seq.*; and constitutes an invasion of privacy under the California Constitution and intrusion upon seclusion under California state law. *Doe* Compl. Johnson similarly brings a class action claim under the ECPA, as well as an intrusion upon seclusion claim under Nevada state law. *Johnson* Compl.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However,

courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678.

If the court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.    DISCUSSION

In both motions, LinkedIn raises threshold arguments regarding consent and lack of intent as a defense to all claims, as well as arguments specific to each claim.  The Court will therefore examine in turn: (1) consent; (2) intent; (3) ECPA; and (4) intrusion upon seclusion under Nevada state law.[3]

### A.    Consent

Consent is a defense to each of Plaintiffs' claims.  *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619 (N.D. Cal. 2021) (collecting cases); *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 631 (1995) ("*PETA*"), *holding modified by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 113 Nev. 632, 940 P.2d 127 (1997), and *holding modified by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 113 Nev. 644, 940 P.2d 134 (1997) ("In order to have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable.").  LinkedIn argues that Plaintiff consented to it receiving their data from Covered California and Nevada Health Link by agreeing to several disclosures. For a defendant to show consent through disclosures, the disclosures must "explicitly notify" users of the practice at issue and must have only one plausible interpretation.  *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019); *In re Google*

---

[3] For the reasons explained below, the Court finds it unnecessary to examine arguments regarding specific claims in *Doe* given the Court's finding of insufficient allegations to demonstrate a lack of consent.

*Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) ("Consent is only effective if the person alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent.").  While there may be "subtle differences" among consent doctrines, "the question under [each] is essentially the same: Would a reasonable user who viewed [the defendant's] disclosures have understood that [it] was collecting [the information at issue]?"  *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014); *see also In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) ("[C]onsent is not an all-or-nothing proposition.").[4]

The Court organizes the parties arguments into two overarching questions: (1) whether Plaintiffs were on notice that third-party websites may be tracking their data; and (2) if so, whether it was reasonable to expect that this data would include the health-related information here.

### 1.    Notice Regarding Third-Party Tracking

LinkedIn argues that disclosures found on LinkedIn, Covered California, and Nevada Health Link's websites all eliminated any reasonable expectation of privacy in Plaintiffs' data.

### a.    LinkedIn's Disclosures

In *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *13 (N.D. Cal. Oct. 10, 2025), the Court considered this issue with respect to the very policies LinkedIn relies on here and found that LinkedIn's disclosures provided sufficient notice of its *general* data collection practices.

The same is true here.  LinkedIn not only discloses that it "use[s] cookies and similar technologies (e.g., pixels and ad tags) to collect data . . . on, off and across different services and devices where [users] have engaged with [LinkedIn's] Services," but it also explicitly explains how the Insight Tag works—by using "[d]ata collected by advertising technologies on and off [LinkedIn's] Services using pixels, ad tags (e.g., when an advertiser installs a LinkedIn tag on their website) cookies, and other device identifiers."  *See Doe* Compl. ¶¶ 36–39 (citing and

---

[4] LinkedIn fails to cite any case regarding consent through disclosures in the context of Nevada's intrusion upon seclusion law.  *See* Mot. in *Johnson* 12–15.

quoting LINKEDIN, PRIVACY POLICY, https://www.linkedin.com/legal/privacy-policy; LINKEDIN, COOKIE POLICY, https://www.linkedin.com/legal/cookie-policy).  This is precisely the conduct alleged here: that LinkedIn uses its Insight Tag to collect data from third party websites.  This level of specificity distinguishes this case from those where courts have found disclosures impermissibly vague.  *See, e.g., In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (finding the plaintiffs' decision whether to opt out of personalized ads was not dispositive of Google's alleged sale and disclosure of plaintiffs' information to third parties because the policy did not concern the sale and disclosure to third parties); *Yoon v. Meta Platforms, Inc.*, No. 24-CV-02612-NC, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (finding Meta's terms of service, data policy, and cookies policy never specifically indicated that Meta may acquire video viewing history obtained from Facebook users' interactions on third-party websites); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (finding the disclosure that Facebook "may use the information we received about you" for "data analysis" was not specific enough to establish that users expressly consented to the scanning of the content of their messages for alleged use in targeted advertising").

### b.    Covered California and Nevada Health Link's Disclosures

The Court is not persuaded, however, that Covered California and Nevada Health Link's policies disclosed any sort of data sharing practices.

LinkedIn contends that the following portions of Covered California's Terms and Conditions of Use[5] inform users that Covered California shares their data with third parties:

> When you browse through any website, certain information about your visit can be automatically collected. While you are visiting this website, at least the following information will be automatically tracked:
> . . . .
> 4. The web pages or services you accessed at this site;
> . . . .
> 9. Uniform Resource Locator (URL) that referred to the requested file;

---

[5] LinkedIn also argues Covered California's Notice of Privacy Practices includes relevant disclosures, but fails to cite to any one in particular.  *See Doe* Mot. 16 (citing Exs. O–P).

Case Nos.: 5:25-cv-03737-EJD, 5:25-cv-08100-EJD
ORDER REGARDING MOTIONS TO DISMISS
6

> 10. The exact request the user made; [and]
>
> . . . .
>
> 13. If you downloaded a form, the form that was downloaded.
>
> . . . .
>
> This information helps us analyze our website to continually improve the value of the materials available, including, but not limited to, our marketing materials.

*Doe* Mot., Ex. P, ECF No. 51-41.  But noticeably absent from these disclosures is any indication that Covered California allows third parties access to this information.  Indeed, the sentence directly following LinkedIn's citation assures users of quite the opposite: "Covered California may provide or distribute certain lists and statistical reports of regulatory information as provided by law, but no personal information is sold or distributed, and all relevant legal protections still apply to the website."  *Id.*

LinkedIn also contends Nevada Health Link's Privacy Policy informs users that Nevada Health Link shares their data with third parties by disclosing that it collects information, including demographic data, income data, citizenship data, disability information, and health insurance coverage information, "during the application and enrollment process."  Mot. in *Johnson*, Ex. K, ECF No. 31-22.  The Privacy Policy also states that Nevada Health Link collects certain "data regarding page views [and] browsing behavior" from visitors to its website.  *Id.*  But again here, these disclosures involve the collection of data by Nevada Health Link, not the sharing of that data with third parties such as LinkedIn.

### 2.    Reasonable Expectation of Privacy in Health-Related Data Shared with LinkedIn

Although the Court finds that LinkedIn sufficiently disclosed its general practice of tracking users' activities on third-party websites, this disclosure does not permit LinkedIn carte blanche to collect any and all data.  *See In re Google Inc.*, 2013 WL 5423918, at \*12 ("[C]onsent is not an all-or-nothing proposition.").  Even with LinkedIn's disclosures, Plaintiffs may still have a reasonable expectation of privacy in certain types of data—i.e., medical-related information.

Courts have often found a lack of consent when the type of data collected, though conceivably included in the disclosure, falls outside the plaintiffs' reasonable expectations.  For example, in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 784–85 (N.D. Cal. 2022), the

Case Nos.: 5:25-cv-03737-EJD, 5:25-cv-08100-EJD
ORDER REGARDING MOTIONS TO DISMISS
7

United States District Court
Northern District of California

plaintiffs alleged Facebook's Meta Pixel transmitted certain personal information to Facebook when they logged into secured patient portals on their medical provider's websites. The court found that, though Meta's policies notified users that it collects and uses personal data from third party websites, it did not specifically indicate that it may acquire health data obtained from interactions with their medical providers' websites. *Id.* at 794; *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003–04 (N.D. Cal. 2024) (finding Meta's disclosure that it collects information about activity on third-party websites did not provide reasonable expectation that Meta would collect sensitive tax information collected from tax preparation websites). On the other hand, collecting information that is only tangentially related to an internet user's health does not, by itself, exceed their reasonable expectation of privacy. In *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), this Court found that data revealing the plaintiffs searched and viewed publicly available health information was not "qualitatively different" and "sensitive" just because it was health-related, particularly given that the data did not "reveal details of an individual's health status or medical history." *See also In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d at 784–85 (distinguishing *Smith*). The Court also more recently found in *L.B.* that, while LinkedIn's terms and conditions disclosed it would take *some form* of data from third-party websites, there was no reasonable expectation they would take the type of health-related data at issue there as a matter of law, making this a question for the jury. *L.B.*, 2025 WL 2899514, at *6–7. Thus, the Court's analysis here depends on the type of data allegedly disclosed.

Plaintiffs allege that LinkedIn collected the following data from Covered California and Nevada Health Link:

(1) *Doe*: Doe alleges that "[i]n or around June 2024, [she] filled out forms on the Covered California Website" and "disclosed identifying information," which was intercepted by the Insight Tag. *Doe* Compl. ¶ 8. Hays alleges the same. *Id.* ¶ 10.

(2) *Johnson*: Johnson alleges that she "submitted her medication and dosage information [to] Nevada Health Link," which was intercepted by the Insight Tag.

Case Nos.: 5:25-cv-03737-EJD, 5:25-cv-08100-EJD
ORDER REGARDING MOTIONS TO DISMISS

*Johnson* Compl. ¶ 12.

The Court finds allegations that Doe and Hays "filled out forms" disclosing unspecified "identifying information" insufficient to support their claims. The complaint indicates that the "identifying information" is described "more thoroughly herein," but no such description exists. *Doe* Compl. ¶¶ 8, 10. The opposition also argues that LinkedIn received Plaintiffs' "sensitive health information," but the complaint only references generalized allegations not specific to Doe or Hays. Opp'n in *Doe* (citing *Doe* Compl. ¶¶ 11, 40). For example, the complaint quotes a Markup article that found "[a]s visitors filled out forms on the website, trackers on the same pages told LinkedIn their answers to questions about whether they were blind, pregnant, or used a high number of prescription medications. The trackers also monitored whether the visitors said they were transgender or possible victims of domestic abuse." *Doe* Compl. ¶ 45 (internal quotation marks omitted). But Plaintiffs make no allegation that this is in fact the information LinkedIn intercepted from them. And if Plaintiffs are insinuating that *all* forms on Covered California involve "confidential" information, this is also not pled.[6] Plaintiffs do not need to allege the exact information provided to LinkedIn with great detail at this stage, but they must at a minimum allege facts sufficient to provide notice and show they had a reasonable expectation of privacy in that data.

As for Johnson, however, the Court finds allegations that LinkedIn intercepted information regarding Johnson's "medication and dosage" sufficient at the pleading stage to overcome LinkedIn's consent defense. Similar to the data at issue in *L.B.*, Johnson alleges she submitted specific and personal information about herself while in search of medical services. A reasonable jury could find that the type of information Johnson submitted combined with the context of seeking medical services places the data outside users' reasonable expectations of what LinkedIn collects.

---

[6] The Court finds LinkedIn's argument that there is no reasonable expectation of privacy in information you volunteer in "optional" fields unpersuasive. There is no support for its theory that individuals can have no reasonable expectation in information volunteered.

LinkedIn's arguments in response largely do not quarrel with this finding; instead, they focus on the plausibility and lack of details in the allegation. The Court finds these arguments unpersuasive. LinkedIn first asserts that allegations LinkedIn intercepted "medication and dosage" information is implausible because that language parrots reporting in the Markup article. However, the Court is bound to accept as true Johnson's allegation that LinkedIn intercepted information regarding her *own* medication and dosage, regardless of whether that same allegation exists in a news article. *Manzarek*, 519 F.3d at 1031 (holding courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party"). LinkedIn next asserts that the failure to allege the specific time and format Johnson provided this information to Nevada Health Link is fatal—LinkedIn contends Johnson could have submitted this information in paper format or during a time when the Insight Tag was inactive. But the Court can reasonably infer that Johnson submitted this information online based on repeated allegations that she used the website to shop for health insurance and can reasonably infer that the Insight Tag was active at this time based on allegations that the Insight Tag intercepted it. *Id.* (holding courts must "construe the pleadings in the light most favorable to the nonmoving party").

For the reasons stated above, the Court **GRANTS** LinkedIn's motion to dismiss the complaint in *Doe* for failure to identify the data allegedly disclosed with leave to amend, *Lopez*, 203 F.3d at 1127; but will continue its analysis of the arguments presented in *Johnson*.

### B.    Intent

Both of Johnson's claims require that LinkedIn knowingly and intentionally obtained her data without authorization and used it for an improper purpose. *See United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (the Federal Wiretap Act requires that "the defendant acted intentionally, that is, purposefully and deliberately and not as a result of accident or mistake"); *PETA*, 111 Nev. at 630, 634 (holding that Nevada common law requires an "intentional intrusion" and considers the "motive" of the alleged tortfeasor).

LinkedIn argues that Johnson fails to allege the requisite intent because LinkedIn's Ads

Agreement explicitly prohibits advertisers from transmitting health information to LinkedIn, and Nevada Health Link controlled the placement of the Insight Tag. According to LinkedIn, any allegation that LinkedIn intended to receive health-related information from Nevada Health Link, despite its advisement, amounts to allegations of "fraudulent misrepresentation" that trigger the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Mot. in *Johnson* 11 (quoting *L.B.*, 2025 WL 2899514, at *13 n.10).[7]

The Court has also considered this issue in *L.B.* with respect to the same LinkedIn Ads Agreement LinkedIn. There, the Court "decline[d] to hold that LinkedIn's Ads Agreement and Advertising Policies are entirely dispositive of its intent at the pleadings stage . . . . because the plaintiffs' allegations created a reasonable inference that the purpose of the Insight Tag is for LinkedIn to collect confidential data from users in violation of their privacy rights." *L.B.*, 2025 WL 2899514, at *13.

Again here, the same is true. Johnson alleges that LinkedIn intentionally intercepted her and class members' communications regarding their medical care through the Insight Tag, which Johnson alleges LinkedIn designed to collect *all* interactions with the Nevada Health Link website. *Johnson* Compl. ¶ 39. Johnson also alleges that the issue of health information being shared via tracking technology is so well known in the technology industry that LinkedIn should have known its Insight Tag was likely collecting personal health information. *Id.* ¶¶ 40–43. Finally, Johnson alleges that LinkedIn monetized the intercepted personal health information in the form of targeted advertising, which is most of LinkedIn's revenue. *Id.* ¶ 9. Though the inference of intent may be relatively weak in light of LinkedIn's policies to the contrary and the absence of specific facts concerning how LinkedIn uses the data it allegedly receives from the Insight Tag, the Court finds these allegations sufficient to survive a motion to dismiss. Under these facts, the question of intent should be considered on a more developed record.

---

[7] While it is true the Court noted in *L.B.* that allegations of fraudulent misrepresentation could trigger the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), similar to the plaintiffs there, Johnson does not allege fraud in the complaint, therefore the Court need not reach this issue for purposes of this Order.

Case Nos.: 5:25-cv-03737-EJD, 5:25-cv-08100-EJD
ORDER REGARDING MOTIONS TO DISMISS
11

United States District Court
Northern District of California

As a secondary argument, LinkedIn contends that the Court should dismiss Johnson's claims under the "presumption of regularity." Mot. in *Johnson* 11. This doctrine "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926). Nevada Health Link is run by the State of Nevada. Under the presumption of regularity, LinkedIn argues there is an insufficient showing of intent because LinkedIn was entitled to expect that a government actor would obey its own state laws and honor the LinkedIn Ads Agreement.

The Court finds this argument unpersuasive. As an initial matter, LinkedIn cites no case examining the presumption of regularity in the context of a Rule 12(b)(6) motion to dismiss—it appears this doctrine is used more commonly in the context of evidentiary burdens. *See id.* (appealing bench trial order); *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 796 (Fed. Cir. 1993) (appealing permanent injunction). However, even assuming this doctrine is appropriate for consideration at this stage of litigation,[8] the Court finds Johnson provides sufficient allegations that LinkedIn received her medication and dosage information, which allows the Court to infer for these purposes that the government actor did not properly discharge their official duties.

The Court therefore finds Johnson sufficiently pled at this stage that LinkedIn knowingly and intentionally obtained her data without authorization and used it for an improper purpose.

###     C.    Federal Wiretap Act

To state a claim under the ECPA, a plaintiff must allege the defendant "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023) ("*Doe v. Meta*"). The ECPA is a one-party consent statute, meaning that there is no liability where "one of the parties to the communication has given prior consent" to the interception. 18 U.S.C. § 2511(2)(d).

---

[8] Johnson also argues that the presumption of regularity does not apply to actions against private actors. Given the Court's finding that the presumption of regularity does not warrant dismissal, the Court need not resolve this dispute at this time.

Case Nos.: 5:25-cv-03737-EJD, 5:25-cv-08100-EJD
ORDER REGARDING MOTIONS TO DISMISS
12

Here, LinkedIn argues Johnson's ECPA claim must be dismissed under the one-party consent rule because Nevada Health Link, as a party to the communication, consented to sharing Johnson's data with LinkedIn by choosing to place the Insight Tag on its website.

Johnson argues in response that whether Nevada Health Link consented to the data sharing alleged here is a question of fact inappropriate for a motion to dismiss, citing *Doe v. Meta*. There, the court found nothing in the record "to show as a matter of law that the healthcare providers did not just presumably but *actually* consented to the sending of sensitive healthcare information of its customers," *Doe v. Meta*, 690 F. Supp. 3d at 1078 (emphasis in original), making this a question of fact:

> Determination of whether actual consent was given depends on what Meta disclosed to healthcare providers, how it described and trained healthcare providers on the Pixel, and how the healthcare providers understood the Pixel worked and the information that then could or would be collected by Meta. These evidence-bound determinations are inappropriate to reach on this motion.

*Id.*

The Court finds LinkedIn's position more persuasive. Johnson alleges that "Nevada Health Link had installed the Insight Tag on the Website," which "resulted in the interception of Plaintiff's PHI by LinkedIn without her consent." *Johnson* Compl. ¶ 47. Plaintiff also describes the Insight Tag as being "automatically" programmed to track and transmit "all interactions on a website to LinkedIn." *Id.* ¶ 19 ("The Insight Tag is programmed to automatically track and transmit communications made between Nevada Health Link and its users."); *id.* ¶ 39 (alleging the "design of the Insight Tag" is to "send[] all interactions on a website to LinkedIn"). Unlike in *Doe v. Meta*, there are allegations here that Nevada Health Link chose to install a tracking pixel that "automatically" tracked and transmitted "all interactions" on its website, and there are no facts to suggest Nevada Health link was unaware of the Insight Tag's automatic functions or could pick and choose alternative features.

The Court therefore **GRANTS** LinkedIn's motion to dismiss the ECPA claim under the

United States District Court
Northern District of California

one-party consent rule with leave to amend.[9]  *See Lopez*, 203 F.3d at 1127.

### D.    Intrusion Upon Seclusion

"To recover for the tort of intrusion, a plaintiff must prove the following elements: 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person." *PETA*, 111 Nev. at 630.

LinkedIn's arguments concerning the first two elements mirror those made above regarding intent and consent.  For the reasons explained in Sections III.A. and III.B., the Court finds LinkedIn's position unpersuasive.  LinkedIn's arguments concerning the third element of "highly offensive" conduct, however, warrants further discussion.

"A court considering whether a particular action is 'highly offensive' should consider the following factors: the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* at 634 (internal quotation marks omitted); *see also Campos v. Town of Pahrump*, 274 F. Supp. 3d 1106, 1118 (D. Nev. 2017) (quoting *Iorio v. Check City P'ship, LLC*, 131 Nev. 1302 (2015)).

LinkedIn argues these factors weigh against finding "highly offensive" conduct. Regarding the motive, objective, and expectation of privacy, LinkedIn again raises the arguments discussed above in the Court's discussion of intent and consent.  Regarding the degree of intrusion and conduct, LinkedIn argues that information about medication dosages is just a "small amount of information" that could have been submitted in response to "optional questions."  Reply in *Johnson* 15.  Regarding the context, circumstances, and settings, LinkedIn argues that Nevada Health Link is a public website, and as discussed above, both LinkedIn and Nevada Health Link disclosed their data sharing practices.

The Court disagrees on all fronts.  LinkedIn's arguments regarding intent, consent, and disclosures are rejected here for all the reasons discussed above—the disclosures do not eliminate

---

[9] The Court need not examine remaining arguments on this claim.

Case Nos.: 5:25-cv-03737-EJD, 5:25-cv-08100-EJD
ORDER REGARDING MOTIONS TO DISMISS

14

the reasonable expectation of privacy in medication and dosage information as a matter of law; and Johnson sufficiently pled at this early stage that LinkedIn knowingly and intentionally obtained her data without authorization and used it for an improper purpose. The Court also finds LinkedIn fails to provide any support for its argument that the "amount" of information disclosed, the public availability of the website, or the optional nature of some forms are relevant to the degree of intrusion or otherwise cause the context, circumstances, and setting factors to tip in LinkedIn's favor. For purposes of the motion to dismiss, the Court finds Johnson's allegations that LinkedIn's unauthorized interception of information regarding her medication and dosage was "highly offensive" conduct sufficient.

The Court therefore **DENIES** LinkedIn's motion to dismiss Johnson's intrusion upon seclusion claim.

## IV.    CONCLUSION

Based on the foregoing, the Court:

- **GRANTS** LinkedIn's motion to dismiss all claims in *Doe* with leave to amend;

- **GRANTS** LinkedIn's motion to dismiss the ECPA claim in *Johnson* with leave to amend; and

- **DENIES** LinkedIn's motion to dismiss the intrusion upon seclusion claim in *Johnson*.

Should Plaintiffs wish to file amended complaints, they must do so by **August 27, 2026**.

**IT IS SO ORDERED.**

Dated: July 30, 2026

EDWARD J. DAVILA
United States District Judge

Case Nos.: 5:25-cv-03737-EJD, 5:25-cv-08100-EJD
ORDER REGARDING MOTIONS TO DISMISS
15