**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (State Bar No. 236805)
ekim@lcllp.com
Tiffine E. Malamphy (State Bar No. 312239)
tiffine@lcllp.com
117 E Colorado Blvd, Ste 600
Pasadena, CA 91105-3712
Tel.: (213) 723-0707
Fax: (858) 313-1850

*Attorneys for Plaintiffs*

Formatted: Line spacing: single

Formatted: Line spacing: single

Formatted: Space After: 0 pt, Line spacing: single

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE and CYNTHIA HAYS individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:25-cv-03737-EJD<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Jane Doe and Cynthia Hays ("Plaintiffs") bring this class action complaint on behalf of themselves and all other persons similarly situated against Defendant LinkedIn Corporation ("LinkedIn" or "Defendant"). Plaintiffs bring this action based on personal knowledge of the facts pertaining to themselves and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1. This is a class action brought on behalf of all persons in the United States who filled out forms on the Covered California website www.coveredca.com (the "Website"). The Website is owned and operated by Covered California, California's health insurance exchange.

2. Unbeknownst to Website visitors, software owned by Defendant LinkedIn, the LinkedIn Insight Tag ("LinkedIn Pixel") is installed on the Covered California website—enabling Defendant to intercept sensitive and confidential communications of Covered California customers.

3. Covered California is California's official health insurance marketplace, established to help residents find and afford health insurance plans. It offers a way to compare and purchase plans from various health insurance companies.

4. LinkedIn develops, owns, and operates "the world's largest professional network with more than 1 billion members in more than 200 countries and territories worldwide."[1]

5. LinkedIn intentionally intercepted sensitive and confidential communications between Covered California and its customers. LinkedIn failed to receive consent for these interceptions. To the contrary, LinkedIn engaged in conduct that expressly contravened its own terms and representations.

6. Consumers reasonably expect that their personal information will remain confidential, particularly when it comes to sensitive data such as medical and insurance information. However, unbeknownst to Plaintiff and members of the putative class, Defendant intercepted this confidential information for target advertising purposes and to increase its own

[1] LINKEDIN, ABOUT, https://about.linkedin.com/?trk=homepage-basic_directory_aboutUrl.

Deleted:

revenue. Plaintiffs bring this action for legal and equitable remedies resulting from these illegal acts.

**PARTIES**

7. Plaintiff Jane Doe is a citizen of California, residing in San Francisco, California. Plaintiff Doe maintained a LinkedIn account at all relevant times before and after completing forms on the Covered California Website. When Plaintiff Doe created her LinkedIn account, she agreed to LinkedIn's User Agreement, which provides that "You and LinkedIn agree that the laws of the State of California, U.S.A. . . . shall exclusively govern any dispute relating to this Contract and/or the Services."[2] LinkedIn's "Services," include those related to its software code known as the LinkedIn Insight Tag.[3]

8. In or around June 2024 Plaintiff Doe applied for health insurance on the Covered California Website. Plaintiff used a browser that she also uses to access her LinkedIn account. When filling out forms on the Website for the purpose of applying for health insurance, Plaintiff Doe disclosed identifying information and confidential information required to apply for coverage including, but not limited to, her pregnancy status, medical provider, expected number of doctor's visits and prescriptions, and ethnicity. Unbeknownst to Plaintiff Doe, LinkedIn was also tracking her private activity on Covered California's Website using the LinkedIn Insight Tag. LinkedIn used this software to track Plaintiff and intercept her communications with Covered California. LinkedIn never received consent from Plaintiff Doe or received permission to track or sell her data to advertisers. LinkedIn's acts and practices, as described herein, are an illegal breach of Plaintiff's privacy.

9. Plaintiff Cynthia Hays is a citizen of California. Plaintiff Hays has utilized Covered California for many years and routinely visits the Website to track her health coverage and submit information as necessary such as identifying and income information, including in 2024. Plaintiff used a browser that she also uses to access her LinkedIn account. Unbeknownst to Plaintiff,

[2] LINKEDIN, USER AGREEMENT, https://www.linkedin.com/legal/user-agreement#dispute

[3] *Id.*

Deleted: filled out forms

Deleted: , as described more thoroughly herein.

Deleted:

Deleted: ¶

Deleted: filled out forms on the Covered California Website

Deleted: When filling out forms on the Website, Plaintiff disclosed identifying information, as described more thoroughly herein.…

Deleted:

LinkedIn was also tracking her private activity on Covered California's Website using the LinkedIn Insight Tag. LinkedIn used this software to track Plaintiff and intercept her communications with Covered California. LinkedIn never received consent from Plaintiff or received permission to track or sell her data to advertisers. LinkedIn's acts and practices, as described herein, are an illegal breach of Plaintiff's privacy

10. Defendant LinkedIn Corporation is a Delaware corporation with its principal place of business located in Sunnyvale, California. Defendant LinkedIn at all times knew that the incorporation of its software into the Covered California Website would result in its interception of confidential prescription data. Defendant LinkedIn, as the creator of its software and the LinkedIn Insight Tag, knew that it intercepted each of a users' interactions on the Website that incorporated its technology. Defendant LinkedIn is well aware of the dangers of incorporating such technology on websites that offer medical and health services, but continues to do so.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this class action because it arises under a law of the United States, namely, 18 U.S.C. § 2511(1).

12. The Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act ("CAFA"), because there are more than 100 class Members, at least one Class member is a citizen of a state different from Defendant, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs.

13. This Court has personal jurisdiction over the parties because Defendant resides in California, Plaintiffs submit to the jurisdiction of the Court, and because Defendant, at all times relevant hereto, have systematically and continually conducted, and continue to conduct, business in California.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

Deleted:

## FACTUAL ALLEGATIONS

### A. Background of the California Information Privacy Act ("CIPA")

15. The CIPA prohibits "any person" from "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned[.]" § 631(a).

16. To establish liability under California Penal Code Section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, or contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> Or
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable, or is being sent from, or received at any place within this state,
>
> Or
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

17. Section 631(a)'s applicability is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc*., 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (the CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., 2006 WL 3798134, at *5–6 (N.D. Cal. Dec. 22, 2006) (the CIPA governs "electronic

Deleted:

communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 607–08 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

18. Plaintiffs and Class Members may seek injunctive relief and statutory damages of $5,000 per violation under the CIPA. Cal. Penal Code § 637.2.

**B. Overview of LinkedIn's Platform And Business Tools**

19. LinkedIn markets itself as "the world's largest professional network on the internet[.]"[4] But LinkedIn is no longer simply a tool to help users find jobs or expand their professional network. LinkedIn has moved into the marketing and advertising space, and boasts of its ability to allow potential advertisers to "[r]each 1 billion+ professionals around the world" via its Marketing Solutions services.[5] Recently, LinkedIn was projected as being responsible for "roughly 0.9 percent of the global ad revenue" which included approximately $5.91 billion in advertising revenue in 2022.[6]

20. According to LinkedIn, "[t]argeting is a foundational element of running a successful advertising campaign — [g]etting your targeting right leads to higher engagement, and ultimately, higher conversion rates."[7] Targeting refers to ensuring that advertisements are targeted to, and appear in front of, the target demographic for an advertisement. To that end, LinkedIn's Marketing Solutions services allow potential advertisers to "[b]uild strategic campaigns" targeting specific users.[8] LinkedIn's "marketing solutions allow advertisers to select specific characteristics

---

[4] LINKEDIN, WHAT IS LINKEDIN AND HOW CAN I USE IT?, https://www.linkedin.com/help/linkedin/answer/a548441#.

[5] LINKEDIN, MARKETING SOLUTIONS, https://business.linkedin.com/marketing-solutions.

[6] Valentina Dencheva, *LinkedIn annual ad revenue 2017-2027*, STATISTA (Dec. 12, 2023), https://www.statista.com/statistics/275933/linkedins-advertising-revenue.

[7] LINKEDIN, REACH YOUR AUDIENCE: TARGETING ON LINKEDIN, p.3, https://business.linkedin.com/content/dam/me/business/en-us/marketing-solutions/resources/pdfs/linkedin-targeting-playbook-v3.pdf.

[8] LINKEDIN, *supra* note 5.

Deleted:

to help them reach their ideal audience. The ads [users] see on LinkedIn are then targeted to provide content relevant to [the users]."[9]

21. As a result of its activities and operation of the LinkedIn Insight Tag, LinkedIn is able to make extremely personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more.[10]

22. The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network.[11]

23. Such information is extremely valuable to marketers and advertisers because the inferences derived from users' personal information and communications allows marketers and advertisers, including healthcare providers and insurance companies, to target potential customers.[12]

24. For example, through the use of LinkedIn's Audience Network, marketers and advertisers are able to expand their reach and advertise on sites other than LinkedIn to "reach millions of professionals across multiple touchpoints."[13] According to Broc Munro of Microsoft,

---

[9] LINKEDIN, LINKEDIN ADS AND MARKETING SOLUTIONS, https://www.linkedin.com/help/lms/answer/a421454.

[10] *See* LINKEDIN, MARKETING SOLUTIONS, https://business.linkedin.com/marketing-solutions/audience ("Target audiences through demographic marketing[,]" "Zero in on intent, behavior, engagement, interests, and more[,]" and "Reach the LinkedIn audience involved in the buying decision").

[11] *See id.*

[12] LINKEDIN, PRIVACY POLICY, https://www.linkedin.com/legal/privacy-policy ("We serve you tailored ads both on and off our Services. We offer you choices regarding personalized ads, but you cannot opt-out of seeing other ads."); LINKEDIN, ACCOUNT TARGETING, https://business.linkedin.com/marketing-solutions/ad-targeting ("Target your ideal customer based on traits like their job title, company name or industry, and by professional or personal interests"); LINKEDIN, EXAMPLES OF TRENDING AND BEST-IN-CLASS HEALTHCARE CAMPAIGNS AND CONTENT, p.6, https://business.linkedin.com/content/dam/me/business/en-us/marketing-solutions/healthcare-microsite/resources/lkin-lms-sales-healthcare-campaigns-trending-content-Jan2023.pdf ("BD zeroed in on the end-benefit with a 30 second video introducing their PIVO needle-free blood collection device to potential customers."); LINKEDIN, HEALTHCARE SOCIAL MEDIA STRATEGIES FOR 2023, p.1, https://business.linkedin.com/content/dam/me/business/en-us/marketing-solutions/healthcare-microsite/resources/hc-social-media-trends.pdf (listing "potential customers" as "Common audiences" for insurance sector).

[13] LINKEDIN, ACCOUNT TARGETING, https://business.linkedin.com/marketing-solutions/ad-targeting.

Deleted:

"[w]e gravitate towards social platforms like LinkedIn to achieve more targeted marketing engagement. However, we know that our audiences don't spend all their time on social media. LinkedIn Audience Network enables us to expand our reach to trusted sites while still respecting our audience targeting. This increases the impact of our advertising."[14]

25. In July 2022, "LinkedIn Marketing Solutions surpassed $5 billion in annual revenue[.]"[15] That figure is "expected to further grow to reach 10.35 billion U.S. dollars by 2027."[16]

26. According to LinkedIn, the LinkedIn Insight Tag is "[a] simple code snippet added to [a] website [that] can help you optimize your campaigns, retarget your website visitors, and learn more about your audiences."[17] LinkedIn represents that the LinkedIn Insight Tag "enable[s] in-depth campaign reporting and unlock[s] valuable insights about your website visitors."[18]

27. LinkedIn's current iteration of its Insight Tag is a JavaScript-based code which allows for the installation of its software.[19] A critical feature allows the LinkedIn Insight Tag to track users, even when third-party cookies are blocked.[20] LinkedIn "recommend[s] using the JavaScript-based Insight Tag or Conversions API" because third-party cookie settings are being deprecated across the industry.[21] Embedding the JavaScript as a first-party cookie causes users' browsers to treat the LinkedIn Insight Tag as though it is offered by the website being visited, rather than by LinkedIn. Doing so ensures that the third-party cookie-blocking functions of

---

[14] LINKEDIN, LINKEDIN AUDIENCE NETWORK, https://business.linkedin.com/marketing-solutions/native-advertising/linkedin-audience-network.

[15] *LinkedIn Business Highlights from Microsoft's FY22 Q4 Earnings*, LINKEDIN PRESSROOM (July 25, 2022), https://news.linkedin.com/2022/july/linkedin-business-highlights-from-microsoft-s-fy22-q4earnings#:~:text=And%20LinkedIn%20Marketing%20Solutions%20surpassed,revenue%20for%20the%20first%20time.

[16] Dencheva, *supra* note 6.

[17] LINKEDIN, INSIGHT TAG, https://business.linkedin.com/marketing-solutions/insight-tag.

[18] LINKEDIN, LINKEDIN INSIGHT TAG FAQS, https://www.linkedin.com/help/lms/answer/a427660.

[19] LINKEDIN, *supra* note 17.

[20] *Id.* ("It's important for advertisers to prepare for these changes by switching to JavaScript tags and enabling 'enhanced conversion tracking' in the Insight Tag settings to continue capturing signals where 3rd party cookies are blocked.").

[21] *See id.*

Deleted:

modern web browsers do not prevent LinkedIn from collecting data through its software.[22] Instead, the LinkedIn Insight Tag is shielded with the same privacy exemptions offered to first-party cookies.

28. When a user who has signed in to LinkedIn (even if the user subsequently logs out) is browsing a website where the LinkedIn Insight Tag has been embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website.

29. Transmissions from users' browsers to LinkedIn through the LinkedIn Insight Tag occur in the same manner on each website where the technology is loaded. When an action is taken on a website, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. LinkedIn's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening. LinkedIn causes the browser to secretly and contemporaneously duplicate the communication with a website transmitting it to LinkedIn's servers, alongside additional information that transcribes the communication's content and the individual's identity. This transmission is initiated by LinkedIn's code, which is part of the Website's source code and therefore commands the website visitor's browser to take certain actions at the moment when a specified event (like a button click) triggers the code. The transmissions intercepted by LinkedIn, therefore, are concurrent with the communications with the host website.

Deleted: and

30. These cookies also include data that differentiate users from one another and can be used to link the data collected to the user's LinkedIn profile.

31. The HTTP request about an individual who has previously signed into LinkedIn includes requests from the "li_sugr" and "lms_ads" cookies. Each of these cookies are used by LinkedIn "to identify LinkedIn Members off LinkedIn" for advertising purposes.[23]

[22] *See id.*

[23] LINKEDIN, LINKEDIN COOKIE TABLE, https://www.linkedin.com/legal/l/cookie-table.

Deleted:

32. For example, the "li_sugr" cookie is "[u]sed to make a probabilistic match of a user's identity."[24] Similarly, the "lms_ads" cookie is "[u]sed to identify LinkedIn Members off LinkedIn for advertising."[25]

33. A LinkedIn profile contains information including an individual's first and last name, place of work, contact information, and other personal details. Based on information it obtains through the LinkedIn Insight Tag, Defendant LinkedIn is able to target its account holders for advertising.

34. LinkedIn never receives consent from users to intercept and collect electronic communications containing their sensitive and unlawfully-disclosed information. In fact, LinkedIn expressly warrants the opposite.

35. When first signing up, a user agrees to the User Agreement.[26] By using or continuing to use LinkedIn's Services, users agree to two additional agreements: the Privacy Policy[27] and the Cookie Policy.[28] For California residents, LinkedIn also publishes a California Privacy Disclosure.[29]

36. LinkedIn's Privacy Policy begins by stating that "LinkedIn's mission is to connect the world's professionals . . . . Central to this mission is our commitment to be transparent about the data we collect about you, how it is used and with whom it is shared."[30]

37. The Privacy Policy goes on to describe what data LinkedIn collects from various sources, including cookies and similar technologies.[31] LinkedIn states "we use cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., device IDs) to recognize you and your

---

[24] *See id.*

[25] *See id.*

[26] LINKEDIN, USER AGREEMENT, https://www.linkedin.com/legal/user-agreement.

[27] LINKEDIN, PRIVACY POLICY, https://www.linkedin.com/legal/privacy-policy.

[28] LINKEDIN, COOKIE POLICY, https://www.linkedin.com/legal/cookie-policy.

[29] LINKEDIN, CALIFORNIA PRIVACY DISCLOSURE, https://www.linkedin.com/legal/california-privacy-disclosure.

[30] LINKEDIN, PRIVACY POLICY, https://www.linkedin.com/legal/privacy-policy.

[31] *Id.*

Deleted:

device(s) on, off and across different services and devices where you have engaged with our Services. We also allow some others to use cookies as described in our Cookie Policy."[32]

38. However, LinkedIn offers an express representation: "**We will only collect and process personal data about you where we have lawful bases.**"[33]

39. As explained more below, despite this explicit representation, LinkedIn intentionally intercepts and receives sensitive and unlawfully disclosed information in violation of state and federal privacy laws.

40. Users never choose to provide sensitive information to LinkedIn because, among other reasons, they never know whether a particular website uses the LinkedIn Insight Tag, and, if so, what sensitive personal data it collects.

**C. How LinkedIn Intercepted Plaintiff's and Class Members' Protected Health Information**

41. Covered California is a website where Californians can shop for health insurance under the Affordable Care Act. It is part of the state government but runs on its own, with a board chosen by the governor and Legislature.[34]

42. As of March 2025, nearly 2 million people were enrolled in health insurance through the Covered California program—a record high. Approximately one in six Californians have been enrolled through Covered California at some point.[35]

43. On April 28, 2025, The Markup, a nonprofit news organization, published an article detailing how Covered California transmitted users' personal health data to LinkedIn as part of a marketing campaign that began in February 2024.[36] The campaign was intended to tailor

---

[32] *Id.*

[33] *Id.* (emphasis added).

[34] The Markup, *How California sent residents' personal health data to LinkedIn*, https://themarkup.org/pixel-hunt/2025/04/28/how-california-sent-residents-personal-health-data-to-linkedin (April 28, 2025).

[35] *Id.*

[36] *Id.*

Deleted: Id.
Formatted: Font: Not Italic
Formatted: Default Paragraph Font, Font: Not Italic
Formatted: Font: Not Italic
Deleted:

advertisements to users, including notifications about open enrollment.[37] This was further confirmed by Kelly Donahue, a spokesperson for the agency.[38]

44. According to the article, "[a]s visitors filled out forms on the website, trackers on the same pages told LinkedIn their answers to questions about whether they were blind, pregnant, or used a high number of prescription medications. The trackers also monitored whether the visitors said they were transgender or possible victims of domestic abuse."[39]

45. The trackers have since been removed.[40] However, The Markup "observed the trackers directly in February and March of this year."[41]

46. As shown below, when an individual indicated they were pregnant, the information was sent to LinkedIn via the Insight Tag.







[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

Deleted:

47. Further, when an individual selected a medical provider, the information was sent to LinkedIn via the Insight Tag.




48. "In addition to demographic information including gender, the site also shared details with LinkedIn when visitors selected their ethnicity and marital status, and when they told coveredca.com how often they saw doctors for surgery or outpatient treatment."[42]




[42] *Id.*

49. As discussed above, LinkedIn intercepts each piece of medical information via a contemporaneous GET request as each piece of information is entered into the Covered California website. LinkedIn immediately views and processes the information and adds it to advertising data sets, as described above.

Deleted: ¶

## CLASS ACTION ALLEGATIONS

50. Plaintiffs bring this action on behalf of all users in the United States who have filled out forms on the Website in the following Classes (collectively, the "Classes"):

***Nationwide Class.*** All natural persons in the United States with a LinkedIn account who completed any form on the Website during the determined Class Period, whose protected personal information was disclosed through the Website to LinkedIn.

***California Subclass.*** All natural persons in the State of California with a LinkedIn account who completed any form on the Website during the determined Class Period, whose protected personal information was disclosed through the Website to LinkedIn.

51. Excluded from the Classes are Defendant, officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which either Defendant has or had a controlling interest.

52. Plaintiffs are members of the Classes they seek to represent.

53. Members of the putative Classes are so numerous that their individual joinder herein is impracticable. Based on information and Plaintiffs' belief, members of the putative Classes number in the thousands. The precise number of putative Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Putative Class members may be notified of the pendency of this action by mail and/or publication through the distribution of Defendant's records.

54. Common questions of law and fact exist as to all putative class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to:

Deleted:

a. Whether LinkedIn's conduct violates the California Invasion of Privacy Act, Cal. Penal Code § 631, *et seq*.;

b. Whether LinkedIn learned the contents of Plaintiffs' and Class Members' communications with Covered California;

c. Whether LinkedIn used the information it learned from the contents of Plaintiffs' and Class Members' communications with Covered California; and

d. Whether LinkedIn intentionally used an electronic amplifying or recording device to eavesdrop or record Plaintiffs' and Class Members' confidential communications with Covered California without the Plaintiffs' and Class Members' consent.

55. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiffs have no interests antagonistic to the interests of the other members of the Class. Plaintiffs and all members of the Classes have sustained economic injury arising out of Defendant's violations of statutory law as alleged herein.

56. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the putative Class members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

57. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the putative members of the Classes. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication,

Deleted:

economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

58. California law applies to the entirety of the Class. California's substantive laws apply to every member of the Class, regardless of where in the United States the Class member resides. Defendant LinkedIn's own User Agreement explicitly states that "[i]n the unlikely event we end up in a legal dispute . . . you and LinkedIn agree to resolve it in California courts using California law[.]"[43] By choosing California law for the resolution of disputes covered by its User Agreement, LinkedIn concedes that it is appropriate for this Court to apply California law to the instant dispute to all Class Members.

59. Further, California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class Members under the Due Process Clause, see U.S. Const. amend. XIV, § 1, and the Full Faith and Credit Clause, see U.S. Const. art. IV, § 1, of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, the claims asserted by the Plaintiffs and all Class members thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair. Defendant's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible. The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class and California has the greatest interest in applying its laws here.

60. Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

[43] LINKEDIN, USER AGREEMENT, note 2.

Deleted:

**COUNT I**
**Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631**

61. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class against Defendant.

62. The California Invasion of Privacy Act (the "CIPA") is codified at California Penal Code Sections 630 to 638. The CIPA begins with its statement of purpose—namely, that the purpose of the CIPA is to "protect the right of privacy of the people of [California]" from the threat posed by "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications . . ." Cal. Penal Code § 630.

63. A person violates California Penal Code Section 631(a), if:

> by means of any machine, instrument, or contrivance, or in any other manner, [s/he] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [s/he] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [s/he] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . .[44]

64. To avoid liability under section 631(a), a defendant must show it had the consent of all parties to a communication.

65. At all relevant times, LinkedIn tracked and intercepted Plaintiffs' and Class Members' internet communications while using www.coveredca.com to fill out forms. These communications were intercepted without the authorization and consent of Plaintiff and Class Members.

[44] Cal. Penal Code § 631(a).

Deleted:

66. The "simultaneous duplication and interception of communications" from the Covered California Website via tracking code constitutes an interception "in transit" under § 631(a). *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025).

67. Through these interceptions, LinkedIn intended to learn some meaning of the content the visitors requested.

68. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the LinkedIn Insight Tag falls under the broad catch-all category of "any other manner":

a. The computer codes and programs LinkedIn used to track Plaintiffs and Class Members' communications while they were navigating www.coveredca.com;

b. Plaintiffs' and Class Members' browsers;

c. Plaintiffs' and Class Members' computing and mobile devices;

d. LinkedIn's web and ad servers;

e. The web and ad servers from which LinkedIn tracked and intercepted Plaintiffs' and Class Members' communications while they were using a web browser to fill out forms on www.coveredca.com;

f. The computer codes and programs used by LinkedIn to effectuate their tracking and interception of Plaintiffs' and Class Members' communications while they were filling out forms on www.coveredca.com; and

g. The plan LinkedIn carried out to effectuate their tracking and interception of Plaintiffs' and Class Members' communications while they were filling out forms on www.coveredca.com.

69. At all relevant times, LinkedIn, through the LinkedIn Insight Tag, intentionally tapped or made unauthorized connections with the lines of internet communications between Plaintiffs and Class Members and the Covered California Website without the consent of all parties to the communication.

70. LinkedIn, willfully and without the consent of Plaintiffs and Class Members, read or attempted to read, or learn the contents or meaning of Plaintiffs' and Class Members'

Deleted:

communications to Covered California while the communications are in transit or passing over any wire, line or able, or were being received at any place within California when it intercepted Plaintiffs' and Class Members' communications and data with Covered California.

71. LinkedIn used or attempted to use the communications and information they received through their tracking technology, including to supply advertising services.

72. The patient communication information intercepted through the LinkedIn Insight Tag, such as pregnancy status, constituted protected health information.

73. As a result of the above violations, Defendant is liable to Plaintiffs and other Class Members in the amount of $5,000 dollars per violation or three times the amount of actual damages, whichever is greater. Additionally, California Penal Code Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

74. Under the CIPA, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future.

**COUNT II**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 632**

75. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class against Defendant.

76. Cal. Penal Code § 632 prohibits "intentionally and without the consent of all parties to a confidential communication," the "use[] [of] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication."

77. Section 632 defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto[.]"

Deleted:

78. Plaintiffs' and Class members' communications to Covered California, including their sensitive personal and health information, such as prescription information, were confidential communications for purposes of § 632, because Plaintiffs and Class Members had an objectively reasonable expectation of privacy in this data.

79. Plaintiffs and Class Members expected their communications to Covered California to be confined to Covered California in part, due to the protected nature of the health information at issue. Plaintiffs and Class Members LinkedIn to secretly eavesdrop upon or record this confidential information and their communications.

80. LinkedIn's tracking technology, i.e., the LinkedIn Insight Tag, are all electronic amplifying or recording devices for purposes of § 632.

81. By contemporaneously intercepting and recording Plaintiffs' and Class Members' confidential communications to Covered California through this technology, LinkedIn eavesdropped and/or recorded confidential communications through an electronic amplifying or recording device in violation of § 632 of CIPA.

82. At no time did Plaintiffs or Class Members consent to LinkedIn's conduct, nor could they reasonably expect that their communications to Covered California would be overheard or recorded by LinkedIn.

83. LinkedIn utilized Plaintiffs' and Class Members' sensitive personal and health information for its own purposes, including for targeted advertising.

84. Plaintiffs and Class Members seek statutory damages in accordance with § 637.2(a) which provides for the greater of: (1) $5,000 per violation; or (2) three times the amount of damages sustained by Plaintiffs and the Classes in an amount to be proven at trial, as well as injunctive or other equitable relief.

85. Plaintiffs and Class Members have also suffered irreparable injury from these unauthorized acts. Plaintiffs' and Class Members' sensitive data has been collected, viewed, accessed, and stored by LinkedIn, has not been destroyed, and due to the continuing threat of such injury, have no adequate remedy at law. Plaintiffs and Class Members are accordingly entitled to injunctive relief.

Deleted:

**COUNT III**

**Invasion of Privacy Under California's Constitution/ Intrusion Upon Seclusion**

86. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein and bring this count individually and on behalf of the members of the Classes against Defendant.

87. Plaintiffs and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiffs' and Class Members' knowledge or consent.

88. At all relevant times, by using the LinkedIn Insight Tag to record and communicate patients' personal identifiers alongside their confidential medical communications, Defendant intentionally invaded Plaintiffs' and Class Members' privacy rights under the California Constitution and intruded in Plaintiffs' and Class Members' seclusion.

89. Plaintiffs and Class Members had a reasonable expectation that their communications, identities, health information, and other data would remain confidential, and that Defendant would not intercept such information communicated on www.coveredca.com.

90. Plaintiffs and Class Members did not authorize Defendant to record and transmit Plaintiffs' and Class Members' private medical communications alongside their personally identifiable and health information.

91. This invasion of privacy was serious in nature, scope, and impact because it related to patients' private medical communications. Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

92. Accordingly, Plaintiffs and Class Members seek all relief available for invasion of privacy under the California Constitution and common law.

Deleted:

**COUNT IV**
**Violation of the Electronic Communications Privacy Act**
**18 U.S.C. § 2511(1), *et seq.***

93. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein and bring this count individually and on behalf of the members of the Classes against Defendant.

94. The Electronic Communications Privacy Act ("ECPA") prohibits the intentional interception of the content of any electronic communication. 18 U.S.C. § 2511.

95. The ECPA protects both sending and receiving communications.

96. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

97. The transmission of Plaintiffs' personally identifying information ("PII") and personal health information ("PHI") to the Covered California Website qualify as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

98. The transmission of PII and PHI between Plaintiffs and Class members and the Covered California Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

99. The ECPA defines "contents," when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. 18 U.S.C. § 2510(8).

100. The ECPA defines an interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Deleted:

101. The ECPA defines "electronic, mechanical, or other device," as "any device…which can be used to intercept a[n]…electronic communication[.]" 18 U.S.C. § 2510(5).

102. The following instruments constitute "devices" within the meaning of the ECPA:

a. The computer codes and programs Defendant used to track Plaintiffs and Class Members' communications while they were navigating the Website;
b. Plaintiffs' and Class Members' browsers;
c. Plaintiffs' and Class Members' mobile devices;
d. Defendant's web and ad servers;
e. The plan Defendant carried out to effectuate the tracking and interception of Plaintiffs' and Class Members' communications while they were using a web browser to navigate the Website.

103. Plaintiffs' and Class Members' interactions with the Covered California Website are electronic communications under the ECPA.

104. Defendant, through its pixel, intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiffs and Class Members in violation of 18 U.S.C. § 2511(1)(a).

105. Specifically, Defendant intercepted—in real time—Plaintiffs' and Class Members' electronic communications via the tracking technology on the Website, which tracked, stored and unlawfully disclosed Plaintiffs' and Class Members' identities, communications, and confidential health information.

106. Defendant intercepted communications that include, but are not necessarily limited to, communications to/from Plaintiffs and Class members, including their identities and information related to their personal and familial medical histories. This confidential information is then monetized for targeted advertising purposes, among other things.

107. By intentionally using, or endeavoring to use, the contents of Plaintiffs' and Class members' electronic communications, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

Deleted:

108. Defendants intentionally intercepted the contents of Plaintiffs' and Class members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, invasion of privacy, among others.

109. The party exception in 18 U.S.C. § 2511(2)(d) does not permit a party that intercepts or causes interception to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State. Here, as alleged above, Defendant violated a provision of the Health Insurance Portability and Accountability Act, specifically 42 U.S.C. § 1320d-6(a)(3). This provision imposes a criminal penalty for knowingly disclosing individually identifiable health information ("IIHI") to a third party. HIPAA defines IIHI as:

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider ... (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.[45]

110. The information Defendant intercepted qualifies as IIHI, and Defendant violated Plaintiffs' and Class Members' expectations of privacy. Such conduct constitutes tortious and/or criminal conduct through a violation of 42 U.S.C. § 1320d-6. Defendant used the electronic communications to increase its profit margins. Defendant specifically used their tracking technologies to track and utilize Plaintiffs' and Class members' PII and PHI for financial gain.

111. Defendant was not acting under the color of law to intercept Plaintiffs' and Class Members' wire or electronic communications.

112. Plaintiffs and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiffs' and Class Members' privacy. Plaintiffs

[45] 42 U.S.C. § 1320d-6.

Deleted:

and Class Members had a reasonable expectation that Defendant would not intercept their communications without their knowledge or consent.

113. The foregoing acts and omission therefore constitute numerous violations of 18 U.S.C. § 2511(1), *et seq*.

114. As a result of each and every violation thereof, on behalf of themselves and the Class, Plaintiffs seek statutory damages of $10,000 or $100 per day for each violation of 18 U.S.C. § 2510, et seq. under 18 U.S.C. § 2520.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A. For a determination that this action is a proper class action;

B. For an order certifying the Class, naming Plaintiffs as representatives of the Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the Classes;

C. For an order declaring that Defendant's conduct violated the statutes referenced herein;

D. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

E. For an award of compensatory damages, including statutory damages where available, to Plaintiffs and the Class Members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial;

F. For punitive damages, as warranted, in an amount to be determined at trial;

G. For an order requiring Defendant to disgorge revenues and profits wrongfully obtained;

H. For prejudgment interest on all amounts awarded;

I. For injunctive relief as pleaded or as the Court may deem proper;

J. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit; and

Deleted:

K. For an order granting Plaintiffs and Class Members such further relief as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the proposed Classes, demand a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: August 20, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 N. California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (State Bar No. 236805)
ekim@lcllp.com
Tiffine E. Malamphy (State Bar No. 312239)
tiffine@lcllp.com
117 E Colorado Blvd, Ste 600
Pasadena, CA 91105-3712
Tel.: (213) 723-0707
Fax: (858) 313-1850

*Attorneys for Plaintiffs*

Deleted: August 19, 2026

Formatted: Indent: Left: 2.5"

Formatted: Indent: Left: 2.5", First line: 0"

Deleted:

Deleted: